IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

**DIANA MEY**, on behalf of herself
and a class of others similarly situated,

 Plaintiff,

               Civil Action No. 5:21-cv-62
               (BAILEY)

v.

**MATRIX WARRANTY SOLUTIONS, INC.,**
**MATRIX FINANCIAL SERVICES, LLC,**
**SING FOR SERVICE, LLC, HARD TACK, INC.,**
and **JOHN DOE DEFENDANTS 1-5**,

 Defendants.

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

 Defendants Matrix Warranty Solutions, Inc., and Matrix Financial Services, LLC's (collectively, the "Matrix Defendants") Motion to Dismiss [Doc. 20] advances three arguments, each of which should be rejected for the following reasons. *First*, the Matrix Defendants suggest that this Court is without personal jurisdiction because Matrix has insufficient contacts with the forum state. But Ms. Mey's Complaint identifies two separate service contracts, each demonstrating that the Matrix Defendants regularly provide warranty services to consumers in the State of West Virginia. Because these contracts give rise to this litigation, personal jurisdiction exists. *Second*, the Matrix Defendants suggest that the Supreme Court's decision in *Barr* deprives this Court of subject matter jurisdiction. But this Court has already considered—and rejected—identical arguments in at least two recent cases. Matrix Defendants provide no basis for this Court to depart from its prior decisions. *Finally*, despite moving under Rule 12(b)(6), the Matrix Defendants attempt to argue the merits of the case. But at this juncture, Ms. Mey need only

plausibly allege that Matrix Defendants were responsible for the offending calls. Here, Ms. Mey alleges that each of the service contracts were branded as "Matrix Inspired" products and obligated Matrix to provide various warranty services. Because these service contracts were received immediately after and in response to the offending telemarketing calls, Ms. Mey has plausibly alleged that Matrix Defendants were responsible for the calls. Whether Matrix Defendants directed the telemarketing calls or exercised a sufficient degree of control over the caller is a question to be answered in discovery.

For these reasons, and those set forth below, the Matrix Defendants' Motion to Dismiss should be DENIED.

## OPERATIVE ALLEGATIONS

In order to satisfy itself that jurisdiction is proper, this Court may consider evidence outside the four corners of the Complaint. The Matrix Defendants, however, treat this as an opportunity to introduce extrinsic evidence wholly unrelated to jurisdictional issues. And by arguing their own account of the facts—which are completely untethered to the Complaint or jurisdictional issues— the Matrix Defendants ask this Court to accept *their* allegations as true without the benefit of discovery. This flips the pleading standard on its head. This Court's analysis should instead be guided by the facts alleged within the four corners of the Complaint, which are assumed to be true and summarized as follows.

The Matrix Defendants are providers of extended warranty services. Compl. ¶ 14. They market these extended warranty services to consumers through various means, including through unsolicited telemarketing calls. *Id*. at ¶ 15. The Matrix Defendants place these calls through an opaque network of sales agents, like Hard Tack. *Id*. at ¶ 16. The Matrix Defendants and their

telemarketing vendors employ various telemarketing strategies, including the use of artificial or prerecorded messages. *Id.*

On April 27, 2017, Ms. Mey received a call from 682-267-1875. *Id*. at ¶ 20. When Ms. Mey answered the call, the following rerecorded message was played: "Hi. This is Heather. I'm calling from the dealer processing department regarding your vehicle's warranty. We sent you a final notice in the mail letting you know that your warranty had expired and this is a final courtesy call to renew the warranty before we close the file. Would you like to speak to a warranty specialist?" *Id*. After answering a series of automated prompts, Ms. Mey was connected with a live agent. *Id*. at ¶ 21. In order to identify the source of the call, Ms. Mey feigned interest in the service offering. *Id*. At the caller's insistence, Ms. Mey agreed to purchase the warranty service and authorized the caller the charge her card. *Id*.

As a result of that transaction, Ms. Mey received a copy of the Service Contract.[1] *Id*. at ¶ 22. The Service Contract delegates administrative obligations to at least two parties, one of which is Matrix. *See* Exhibit A. For instance, the Service Contract identifies Dealers Alliance Corporation as the "Administrator," but policy holders were directed to "report the repairs to the **Administrator** at **1-855-500-MATRIX (6287)**." *Id*. (emphasis in original). The Service Contract likewise provides that the "Claims Department can be reached at **1-855-500-MATRIX**" and at the bottom of each page the Service Contract provided the below instruction:

---

[1] This Court may consider documents that are incorporated by reference into the complaint without converting the motion to one for summary judgment. *See Johnson v. James B. Nutter & Co.*, 438 F.Supp.3d 697, 704 (S.D. W.Va. 2020). Each of the Service Contracts are referenced in the Complaint and quoted in relevant parts.

> **AUTHORIZATION MUST BE OBTAINED FROM THE ADMINISTRATOR BEFORE STARTING ANY TEARDOWN OR REPAIRS.**
> **PLEASE CALL 1-855-500-MATRIX (6287) FOR AUTHORIZATION AND INSTRUCTIONS.**

*Id*. (emphasis in original). Further implicating Matrix, the Service Contract was stamped with a logo claiming that the warranty product was "Matrix Inspired." *Id*.

On April 6, 2020, Ms. Mey received a call from 954-360-8137. *Id*. at ¶ 26. A live agent identified himself as "Melvin" and began pitching extended vehicle warranties. *Id*. Ms. Mey was busy at that time, so Melvin offered to call her back later. *Id*. Ms. Mey agreed. *Id*. Nearly two hours later, Ms. Mey received another call from 954-360-8137. *Id*. at ¶ 27. The same live agent from earlier in the day — now identifying himself as "Melvin Daniel" — again pitched an extended vehicle warranty. *Id*. Ms. Mey continued to feign interest in the service offering and, in order to identify the true identity of the caller, authorized the live agent to charge her credit card. *Id*.

As a result of this telemarketing call, Ms. Mey received by email another Service Contract, similar to the one she had received on April 27, 2017. *Id*. at ¶ 28. The policy identifies Dealer Renewal Services (i.e., Hard Tack) as the "Selling Company," Matrix Financial Services, LLC as the "Obligor" specific to the State of West Virginia, Matrix Warranty Solutions as the "Administrator," and Sing for Service, LLC d/b/a MEPCO as the "Payment Plan Provider." *See* Exhibit B.

The April 2017 and 2020 Service Contacts are remarkably similar. *Compare* Exhibit A *with* Exhibit B. Like the April 2017 Service Contract, the April 2020 Service Contract was stamped with an identical logo claiming that the warranty product was "Matrix Inspired." *Id*. And like the April 2017 Service Contract, the April 2020 Service Contract was stamped with an nearly

identical footer on each page, providing that "Authorization must be obtained from the Administrator before starting any teardown or repairs.  Please call 1-833-228-1900 for authorization and instructions."  *Id*.  Finally, both the April 2017 and 2020 Service Contracts refer to the "Element" product line.  Compl. ¶ 29; Exhibits A (referred to as an "Element EP" plan) and B (stamped with "The Element" logo).  As alleged in the Complaint, more information about "The Element" coverage plans can be found at https://www.elementprotectionplans.com/.  *Id*. at ¶ 30.  Notably, website users are encouraged to "contact us" at 3100 McKinnon Street, Suite 420, Dallas, Texas, which happens to be Matrix's principal place of business.  *Id*.  Under the "Other Plans" tab, website users are directed to other Matrix warranty products.

On April 24, 2021, Ms. Mey filed the instant class action Complaint, alleging that the Matrix Defendants and their agents, acting as a common enterprise to promote and sell extended automobile warranties, knowingly engaged in a pattern and practice of illegal telemarketing in violation of the Telephone Consumer Protection Act ("TCPA").  In particular, Ms. Mey alleges that Matrix Defendants and their agents violated the TCPA by (i) initiating calls to Ms. Mey and other putative class members whose numbers are registered on the National Do Not Call Registry, and (ii) initiating calls to Ms. Mey and other putative class members using artificial or prerecorded messages.

## ARGUMENT

The Matrix Defendants ask this Court to dismiss the Complaint, arguing that (i) this Court does not have personal jurisdiction, (ii) this Court does not have subject matter jurisdiction, and (iii) Ms. Mey failed to plausibly allege a claim.  For the reasons that follow, each argument should be rejected.

I. **Because the Matrix Defendants regularly transact business in West Virginia and those contacts give rise to this litigation, this Court has specific personal jurisdiction.**

Ms. Mey must establish personal jurisdiction by a preponderance of the evidence, but need only make a *prima facie* showing. *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020). In considering whether Ms. Mey has met this burden, this Court may look beyond the Complaint to declarations and exhibits in order to assure itself of personal jurisdiction. *Id*. Importantly, this Court must also "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id*.

In this case, personal jurisdiction exists because the Matrix Defendants routinely transact business in West Virginia and contract with West Virginia consumers to supply services in this state. And each of these activities satisfies West Virginia's long-arm statute. *See* W.Va. Code § 56-3-33(a)(1)-(2). Where, as here, the long-arm statute is coextensive with due process, this Court need only determine whether application of the statute will violate due process. *Bashaw v. Belz Hotel Mgmt. Co.*, 872 F.Supp. 323, 325 (S.D. W.Va. 1995). To determine whether specific jurisdiction exists, this Court must consider: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *UMO Recordings*, 963 F.3d at 351-52. The Matrix Defendants' argument is exclusive to the first prong, arguing that its contacts with the forum state are insufficient to confer jurisdiction.

**First**, the Matrix Defendants have purposefully availed themselves of the privilege of conducting business in West Virginia. For instance, the Matrix Defendants profit from their exposure to the West Virginia market by offering warranty services to West Virginia consumers.

This point is best illustrated by the April 2020 Service Contract, which obligated the Matrix Defendants to provide various warranty services in West Virginia to a West Virginia resident for the life of the program—here, 36 months or 75,000 miles. *See* Exhibit B. For instance, to make a warranty claim or request towing/roadside services, Ms. Mey was prompted to contact Matrix Warranty Solutions. One can infer that Matrix Warranty Solutions, as the "Administrator," would then be obligated to provide the towing/roadside assistance itself or, more likely, arrange for a local agent to provide the services. If the latter, then an additional contact is made with the forum state. The Service Contract likewise obligated Matrix Financial Services LLC, the "Obligor," to pay for covered repairs and replacements for the life of the program. Because Matrix warranted a West Virginia licensed vehicle traveling on West Virginia roads, one can infer that Matrix Financial Services LLC would then be obligated to provide the repair/replacement services itself or, more likely, arrange for a local agent to provide for the services. If the latter, then an additional contact is made with the forum state. Either way—whether the services are performed by them or their agents— the Matrix Defendants obligated themselves to perform a number of services within the forum state for a forum resident. The quality and quantity of these contacts is sufficient to confer personal jurisdiction.

The April 2020 Service Contract also suggests that the Matrix Defendants have *many* West Virginia customers, as Matrix Financial Services, LLC is designated the state-specific "Obligor" for West Virginia:



*See* Exhibit B. By designating a specific Matrix entity to "serve as the Obligor of the Service Agreements" consummated in West Virginia, one can reasonably infer that Matrix's contacts are not limited to Ms. Mey. By marketing and selling these extended auto warranty agreements to West Virginia customers, the Matrix Defendants necessarily contemplate an ongoing relationship with the forum state and its residents. Based on these allegations, this Court can infer that the Matrix Defendants purposefully availed themselves of the privilege of conducting business in West Virginia. And it is these very contacts—marketing auto warranty services—that give rise to this litigation.

Based on the *Declaration of Jay Tuerkin*, the Matrix Defendants argue that they have "never conducted business operations of any kind *from* the State of West Virginia." [Doc. 21-1], at ¶ 6 (emphasis added). But this carefully worded declaration is more remarkable for what it does not say—notably, whether Matrix conducts any business *in* West Virginia. Even though a defendant does not have a physical presence in the state, personal jurisdiction can be established where—as here—a defendant transacts with West Virginia consumers. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (rejecting the notion that an absence of physical contacts can defeat personal jurisdiction). And though an individual's contract with an out-of-state party alone cannot automatically establish sufficient minimum contacts, personal jurisdiction may be

8

established where—as here—the out-of-state defendant contemplated a substantial and continuing contractual relationship with a forum resident. *Johnson v. Diamond Shine, Inc*., 890 F.Supp.2d 763, 770 (W.D. Ky. 2012) (finding that out-of-state defendant purposely availed itself of forum state when contract with forum resident contemplated substantial and continuing relationship within forum state); *Southwest Research Inst. v. California Fueling, LLC*, 509 F.Supp.3d 656, 665 (W.D. Tex. 2020) ("Where the defendant deliberately has engaged in significant activities within a State or has created continuing obligations between himself and residents of the forum, he has availed himself of the privilege of conducting business there").  That the Matrix Defendants contemplated continuing contractual relationships with West Virginia residents and obligated themselves to perform ongoing warranty services within the forum demonstrates that the Matrix Defendants purposefully availed themselves of the privilege of conducting business in West Virginia.

Moreover, because the *purposeful availment* standard is not susceptible to mechanical application—especially in the context of remote activities—courts will also consider whether a defendant engaged in some activity *purposefully directed* toward the forum state.  *UMG Recordings*, 963 F.3d at 351-52.  Because the TCPA incorporates general common law principles of agency and vicarious liability, a principal may be held liable under the TCPA for the acts of an agent.  Because the third-party callers are alleged to have acted as Matrix Defendants' agents when they made the offending calls (*see infra,* ARGUMENT III), those calls are attributed to the Matrix Defendants as their own acts for the purpose of determining personal jurisdiction. *Keim v. ADF MidAtlantic, LLC*, 199 F.Supp.3d 1362, 1368 (S.D. Fla. 2016); *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd*., 288 F.3d 1264, 1272 (11th Cir. 2002); *Taylor v. Phelan*, 912 F.2d 429, 433 (10th Cir. 1990).  This principle is expressly incorporated into West Virginia's long-arm statute, providing

9

that the performance of any of the enumerated acts—including, transacting business, contracting to provide services, or causing injury—may give rise to personal jurisdiction when done "by his or her duly authorized agent." W.Va. Code § 56-3-33.

This Court has previously recognized that sending calls or messages into the forum state by targeting a telephone number within that particular forum is sufficient to establish specific personal jurisdiction. S*ee Mey v. All Access Telecom, Inc., et al.*, No. 5:19-CV-237 [Doc. 126], (N.D. W.Va. April 23, 2021) (collecting cases); *Mey v. Castle Law Group, PC*, 416 F.Supp.3d 580, 586 (N.D. W.Va. 2019) (collecting cases). Thus, the offending calls to Ms. Mey—whether made by Matrix Defendants or at their direction—are sufficient to establish specific personal jurisdiction over the Matrix Defendants. And while the Matrix Defendants may have outsourced the role of finding customers to a network of telemarketers, the fact remains that the Matrix Defendants derive income from this network of telemarketers targeting West Virginia consumers. And the fact that these telemarketers produce West Virginia service contracts for the Matrix Defendants to purchase and administer indicates that the Matrix Defendants know—either actually or constructively—about its West Virginia consumer base and that it exploits that base for commercial gain. It is these contacts—telemarketing auto warranty services—that gives rise to this litigation. Accordingly, there is a direct causal relationship between the Matrix Defendants, the forum, and the litigation.

**II.  The Matrix Defendants' constitutional challenge rests on a misreading of *AAPC* and requires this Court to overrule itself in two other cases.**

The Matrix Defendants move to dismiss Count I of the Complaint based on *Barr v. Am. Ass'n of Political Consultants, Inc.* ("*AAPC*"), 140 S.Ct. 2335 (2020), which, as they suggest, deprives this Court of subject matter jurisdiction. But this Court has already considered — and rejected — identical arguments on at least two recent occasions. *See Mey v. Medguard Alert, Inc.*,

No. 5:19-CV-315 [Doc. 88], 2021 WL 1652945, at *2 (N.D. W.Va. Apr. 27, 2021); *Mey v. All Access Telecom, Inc., et al.*, No. 5:19-CV-237 [Doc. 126], (N.D. W.Va. April 23, 2021). Matrix Defendants' Motion should suffer a similar fate, as there is no reason to question this Court's prior analysis. This Court's prior decisions also fall within the clear majority of cases to have considered this very issue.[2]

The Matrix Defendants cite to only three cases, which adopt a similar position, but which are clear outliers.[3] These three outlier opinions simply ignored Justice Kavanaugh's plurality opinion as dicta. But, even if it were only dicta, this Court cannot dismiss such pronouncements so lightly. *Wynne v. Town of Great Falls*, 376 F.3d 292, 298 n.3 (4th Cir. 2004) ("With inferior courts, like ourselves, that argument carries no weight since carefully considered language of the

---

[2] *See Bonkuri v. Grand Caribbean Cruises, Inc.*, No. 0:20-CV-60638, 2021 WL 612212, at *1-3 (S.D. Fla. Jan. 19, 2021) ("[I]t appears that the clear majority of cases to consider this issue have allowed parties to continue to bring § 227(b) claims post-*AAPC*."); *McCurley v. Royal Sea Cruises, Inc.*, No. 17-CV-00986, 2021 WL 288164, *1 (S.D. Cal. Jan. 28, 2021); *Less v. Quest Diagnostics Inc.*, No. 3:20 CV 2546, 2021 WL 266548, at *1 (N.D. Ohio Jan. 26, 2021); *Stoutt v. Travis Credit Union*, No. 2:20-CV-01280, 2021 WL 99636, *5 (E.D. Cal. Jan. 12, 2021); *Trujillo v. Free Energy Sav. Co., LLC*, No. 5:19-CV-02072, 2020 WL 8184336, *5 (C.D. Cal. Dec. 21, 2020); *Shen v. Tricolor California Auto Grp., LLC*, No. CV 20-7419, 2020 WL 7705888, at *4 (C.D. Cal. Dec. 17, 2020); *Abramson v. Federal Insurance Company, Bay Area Health, LLC*, No. 8:19-cv-2523, 2020 WL 7318953 (M.D. Fla. Dec. 11, 2020); *Buchanan v. Sullivan*, No. 8:20-CV-301, 2020 WL 6381563, at *3 (D. Neb. Oct. 30, 2020); *Schmidt v. AmerAssist A/R Sols. Inc.*, No. CV-20-00230, 2020 WL 6135181, *4 n.2 (D. Ariz. Oct. 19, 2020); *Lacy v. Comcast Cable Communications, LLC*, No. 3:19-cv-05007, 2020 WL 4698646, *1 (W.D. Wash. Aug. 13, 2020); *Komaiko v. Baker Techs., Inc.*, No. 19-cv-03795, 2020 WL 5104041, at *2 (N.D. Cal. Aug. 11, 2020); *Burton v. Fundmerica, Inc.*, No. 8:19-CV-119, 2020 WL 4504303, at *1 n.2 (D. Neb. Aug. 5, 2020); *Miles v. Medicredit, Inc.*, No. 4:20-cv-01186, 2021 WL 872678, at *1 (E.D. Mo. Mar. 9, 2021); *Massaro v. Beyond Meat, Inc., et al.*, No. 3:20-cv-00510, 2021 WL 948805, at *9 (S.D. Cal. Mar. 12, 2021); and *Pearson v. Tech. Education Services, Inc.*, No. 1:19-CV-03735, 2021 WL 2336533, at *4 (N.D. Ga. June 8, 2021).

[3] Matrix cites a fourth case—*Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, No. 5:20-cv-38, 2020 WL 7346536, (M.D. Fla. Dec. 11, 2020)—wherein the district court initially concluded that it lacked subject matter jurisdiction. However, that court expressly reversed itself in a later opinion on the same issue. *Boisvert v. Carnival Corp.*, No. 8:20-cv-2076, 2021 WL 1329079, at *2 (M.D. Fla. Mar. 12, 2021) ("Upon further reflection, the Court departs from its earlier opinion because, since the Court's Order in *Hussain*, every court faced with this same issue has concluded that a plaintiff may continue to bring § 227(b) claims post-*AAPC*.").

11

Supreme Court, even if technically dictum, generally must be treated as authoritative.") (cleaned up). Justice Kavanaugh's pronouncements are also consistent with the majority decision in *AACP*, wherein seven Justices specifically declined to strike down the TCPA's entire robocall ban, as requested by the *AAPC* plaintiffs. *AAPC*, 140 S.Ct. at 2343 ("the entire 1991 robocall restriction should not be invalidated"). The Supreme Court refused to strike down the robocall ban in its entirety, instead excising the offending language and saving the remainder of the statute. *Stoutt*, 2021 WL 99636, at *4 ("Holding the entire robocall ban to be ineffective as to calls made between 2015 and 2020 would improperly construe *AAPC* as having invalidated the entirety of § 227(b)(1)(A)(iii), rather than just the government-debt exception, and thus would undermine the Court's central purpose in severing the statute."). This Court should refuse the Matrix Defendants' invitation to do what the Supreme Court would not.

**III. Ms. Mey plausibly alleges that Matrix Defendants are responsible for the offending calls.**

As a last resort, the Matrix Defendants argue that Ms. Mey failed to plausibly allege that the Matrix Defendants were responsible for the offending calls. But Matrix Defendants ask for more than is required at this juncture. *All Access Telecom,* [Doc. 126] at *11 ("Whatever the true and exact relationship between defendant and its customers is, the Court finds it to be too fact-intensive to be resolved at the motion to dismiss phase in defendant's favor.") (cleaned up); *McFadden v. Washington Metro. Area Transit Auth.*, 949 F.Supp.2d 214, 222 (D.D.C. 2013) (providing that the existence of a principal-agent relationship is ordinarily a question of fact which is ill-suited for resolution at the motion to dismiss stage).

Though, as always, the facts alleged in the Complaint are not conclusive proof that the calls were made at the Matrix Defendants' direction, they are enough to connect Matrix Defendants to the calls in question. And that is sufficient to plausibly plead a claim under the TCPA. *Mey v.*

12

*Medguard Alert, Inc.*, No. 5:19-CV-315, 2020 WL 1258639, at *3 (N.D. W.Va. Mar. 16, 2020) (slip copy) (providing that plaintiff had alleged sufficient facts to connect defendants to the calls in question and, therefore, allegations were sufficient to survive a motion under 12(b)(6)).

Here, the Complaint identifies two separate service contracts, each of which was provided to Ms. Mey as a result of the telemarketing calls. Compl. ¶¶ 22, 28-29. Each of those service contracts was branded as "Matrix Inspired" and directed the policy holder to contact Matrix with regard to the warranty obligations. *Id*. at ¶¶ 22, 29. That the true identity of the caller is unknown at this juncture is of no consequence. *See Medguard Alert*, 2020 WL 1258639, at *3 ("Defendants may seek to obtain more information on this alleged call through discovery, and if information is lacking, are free to move for summary judgment."). Given that the telemarketer was selling Matrix products, this Court may reasonably infer that Matrix Defendants were directly responsible for these offending calls or, alternatively, that the calls were made by a vendor under Matrix Defendants' control. Whether Matrix directed the telemarketing calls or exercised a sufficient degree of control over the caller is a question to be answered in discovery. The allegations in the Complaint, taken as true, plausibly connect the Matrix Defendants to the alleged calls and therefore plausibly plead a claim under the TCPA.

## CONCLUSION

For the foregoing reasons, this Court should deny the Matrix Defendants' Motion to Dismiss. Alternatively, in the event this Court finds the allegations to be insufficiently pleaded, Ms. Mey requests leave to amend her Complaint to address the Matrix Defendants' challenges.

**DIANA MEY**

By Counsel:

/s/ Jeff E. Parsons
James G. Bordas, III (WV Bar # 8518)
Jeff E. Parsons (WVSB # 10678)
BORDAS & BORDAS, PLLC
1358 National Road
Wheeling, WV 26003
(304) 242-8410
jbordasIII@bordaslaw.com
jparsons@bordaslaw.com

Ryan M. Donovan (WVSB #11660)
Andrew C. Robey (WVSB #12806)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
t: 681-265-3802
f: 304-982-8056
rdonovan@hfdrlaw.com
arobey@hfdrlaw.com

14

## CERTIFICATE OF SERVICE

      The undersigned counsel does hereby certify that on August 16, 2021, a true copy of the foregoing document was served upon all parties of record electronically via this Court's CM/ECF system.

      /s/ Jeff E. Parsons