**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT WHEELING**

|  |  |
|---|---|
| **DIANA MEY, on behalf of herself and a class of others similarly situated,**<br><br>                              Plaintiff,<br><br>v.<br><br>**MATRIX WARRANTY SOLUTIONS, INC., et al.,**<br><br>                              Defendants. | **Civil Action No. 5:21-CV-62 (Bailey)** |

### MATRIX WARRANTY SOLUTIONS, INC. AND MATRIX FINANCIAL SERVICES, LLC'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

Defendants Matrix Warranty Solutions, Inc. and Matrix Financial Services, LLC (collectively, the "Matrix Defendants") respectfully submit this Reply in support of their Motion to Dismiss Plaintiff's Complaint, ECF Nos. 20-21.

## I.    INTRODUCTION

Plaintiff's Opposition fails to address the key arguments in the Matrix Defendants' Motion to Dismiss.  Instead, Plaintiff simply chooses to reprise her allegations about calls she received from another party, and invites the Court to ignore applicable Supreme Court precedent regarding the constitutional and pleading defects in Plaintiff's claims against the Matrix Defendants, whom all parties agree have never had a single interaction with Plaintiff.

The central fallacy in Plaintiff's argument is her unfounded assumption that because she has stated a viable claim here against another defendant—Hard Tack, the company that actually called her and sold her the products she bought—she must necessarily also have a claim against the Matrix Defendants for *Hard Tack's* telephone calls to her.  But Plaintiff gives no basis for her

implausible assumption that the Matrix Defendants *controlled* Hard Tack's sales and marketing practices, nor could she in the face of the Matrix Defendants' President's declaration explaining the total autonomy Hard Tack has in conducting its sales and marketing operations, as evidenced by the fact that *Plaintiff herself* first bought a *Matrix-competitor's* product from Hard Tack. Almost equally telling is that Plaintiff relies on repetition of conclusions that are asserted in the complaint as "support" for her response brief, as if conclusions about the marketing arrangements can be substituted for actual factual allegations.

Consumers  buy things every day from independent sellers that are not agents of the companies whose products they sell.  No one walks into a Cabela's and thinks to themselves, "Cabela's sure has many masters; it must be hard to do business while being controlled by so many manufacturers of these thousands and thousands of products."  Sure, Cabela's can't open the box and tinker with the gun or fishing rod; but no one seriously believes that every one of those manufacturers controls *how Cabela's sells* the products it sells.  So too here.  Texas-based Matrix had a contract with Florida-based Hard Tack authorizing Hard Tack to sell Matrix products, among the other Matrix-competing products that Hard Tack sells.  Plaintiff's claim isn't about *the Matrix product* at all.  She could care less about that product, by her own admission.  Compl. ¶ 27, ECF No. 1 ("Ms. Mey continued to feign interest in the service offering . . . .").  Plaintiff's case is about Hard Tack's (or a non-party it contracted with) *phone calls* to one of Ms. Mey's many mobile telephones.  *That* is the conduct that Plaintiff needs to connect *Matrix* with: she needs to show that *Matrix* purposefully directed itself *to Plaintiff in West Virginia* to establish specific jurisdiction (or a plausible vicarious liability claim).  But she glides right past that essential, necessary issue, and instead points to the fact that Matrix *administers* service contracts in West Virginia to other non-party, bona fide customers.  But that has nothing to do with phone calls Plaintiff received; indeed,

that has nothing to do with *any* phone calls.  It is a half-hearted attempt to completely collapse the Supreme Court's abundant, clear, controlling precedent distinguishing *specific* (as in specific to Plaintiff's claim) from *general* jurisdiction.

Plaintiff has failed to carry her burden to show that personal jurisdiction exists over the Matrix Defendants.  She fails to provide any evidence of her own to refute the Matrix Defendants' sworn testimony showing they had no knowledge of or control over the telemarketing calls at issue—and thus no constitutionally required connection to this forum in this case.  Instead, Plaintiff focuses almost exclusively on the provisions of vehicle service contracts that are irrelevant to the claims at issue.  This is a TCPA case about *telephone calls*, which there is no dispute that the Matrix Defendants did not make.  Plaintiff does not dispute that she *never* had any contact with the Matrix Defendants.  It is irrelevant that Matrix has other bona fide vehicle-service-contract customers here in West Virginia.  The Court should decline Plaintiff's invitation to ignore the Supreme Court's controlling precedent.

Likewise, Plaintiff does not rebut the Matrix Defendants' arguments that Count I of her Complaint should be dismissed for lack of subject matter jurisdiction.  She merely raises irrelevant points that the Matrix Defendants have either already fully addressed or that are not in dispute.  What Plaintiff ultimately fails to rebut is that on July 6, 2020, in *Barr v. American Association of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020) ("*AAPC*"), the Supreme Court held that the TCPA's automated-calling prohibition—the very statutory provision upon which Plaintiff's allegations are based—was an unconstitutional, content-based suppression of speech.  It addressed the law's unconstitutional condition by *prospectively* severing the exemption that Congress had created for automated calls made to collect a federal debt.  Thus, the TCPA's automated-call prohibition was unconstitutional from the enactment of the government-debt exemption in 2015

3

until the Supreme Court's severance became operative in July 2020, i.e., during the entire time at issue here.

Finally, Plaintiff asks the Court to ignore another controlling line of Supreme Court precedent—its pleading standard under *Iqbal* and *Twombly*.  The well-established pleading standard is that a plaintiff's allegations must cross the threshold from merely possible into plausible.  Here, Plaintiff makes no effort to provide any insight or factual support to show how either of the Matrix Defendants, whom she never communicated with, could *plausibly* be subject to vicarious liability for the calls she admittedly received from other parties.  Instead, she waves away this standard, claiming that the Matrix Defendants' request that she abide by Rule 8's standard "ask[s] for more than is required," Opp. at 12, ECF No. 33, and suggests she be given unlimited discretion to determine what her claims actually are in discovery.  This is not permissible under the Supreme Court's pleading standard in *Twombly* and *Iqbal*.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Threadbare conclusions like Plaintiff's do not open the doors to discovery.  *Iqbal*, 556 U.S. at 678-79.  Plaintiff's conclusory allegations fail to state a claim against the Matrix Defendants.

## II.     ARGUMENT

### A.      Plaintiff Fails to Provide any Factual Support to Show That This Court may Assert Personal Jurisdiction Over the Matrix Defendants.

Plaintiff's Complaint should be dismissed for lack of personal jurisdiction because Plaintiff presents no factual support to plausibly show that the Matrix Defendants are responsible for the telephone calls that form the basis of her claims—the only analysis relevant to specific jurisdiction in this matter.  She ignores that this is a TCPA case, and that the only relevant conduct here is conduct related to telemarketing calls she received.  Instead, she only posits arguments relating to the terms of vehicle service contracts she purchased on an illusory basis.  These vehicle service

contracts are irrelevant to allegedly unlawful telemarketing calls. Plaintiff's Complaint makes clear (and Matrix confirms) that she never communicated with the Matrix Defendants in connection with the calls she received advertising these contracts, and her Opposition provides no evidence to rebut the sworn declaration testimony provided by the Matrix Defendants showing that they had no involvement with any marketing calls to her.

While the Court must construe all relevant pleadings in the light most favorable to the plaintiff when deciding a motion to dismiss pursuant to Rule 12(b)(2), the law does not require courts to "credit conclusory allegations or draw farfetched inferences." *Masselli & Lane, PC v. Miller & Schuh, PA*, No. 99-2440, 2000 U.S. App. LEXIS 11932, at *4-5 (4th Cir. 2000) (quoting *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994)). And when defendants introduce sworn affidavit testimony contesting plaintiff's allegations, the plaintiff cannot simply rely on her conclusory allegations, but must present relevant and credible evidence in rebuttal. *See Wolf v. Richmond Cnty. Hosp. Auth.*, 745 F.2d 904, 908 (4th Cir. 1984); *see also Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817, 837 (D.S.C. 2015) (finding the court lacked jurisdiction because plaintiff failed to produce evidence to rebut the affidavit testimony of defendants). Plaintiff's claims fail because they rely entirely on baseless conclusions about the relationship between the Matrix Defendants and independent companies authorized to market their products, as well as irrelevant arguments regarding the terms of vehicle service contracts that have no bearing on her telemarketing claims.

Plaintiff argues that specific jurisdiction applies to the Matrix Defendants because they have allegedly availed themselves of this forum's jurisdiction "by offering warranty services to West Virginia consumers." Opp. at 6. But Plaintiff forgets that the *specific* in specific jurisdiction means *specific to Plaintiff's claims*. This is a TCPA case; the telephone calls at issue here are the

only acts relevant to the purposeful-availment analysis, or as appropriate for TCPA cases like this one, the purposeful-direction prong of that analysis. *See Mey v. All Access Telecom, Inc.*, Civil Action No. 5:19-cv-00237-JPB, 2021 U.S. Dist. LEXIS 80018, at *8 (N.D.W. Va. Apr. 23, 2021) ("Because TCPA claims sound in tort, the Court will limit its discussion to 'purposeful direction.' In TCPA cases . . . specific jurisdiction exists when a defendant makes a call or sends a message into the forum state . . . ." (citations omitted)).[1]

Specifically, the Supreme Court has ruled that, for a purposeful direction analysis, the Court must find that the defendant "expressly aimed" its conduct at the forum state such that it must have "reasonably anticipate[d] being haled into court there." *See Calder v. Jones*, 465 U.S. 783, 789-90 (1984). "Importantly, the specific jurisdictional inquiry 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Farrar v. McFarlane Aviation, Inc.*, 823 F. App'x 161, 163 (4th Cir. 2020) (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)); *see also Walden*, 571 U.S. at 284 (explaining that "the defendant's *suit-related conduct* must create a substantial connection with the forum State." (emphasis added)). And the conduct in question must be the conduct of *the defendant*; the defendant cannot be dragged into a foreign forum based on the actions of the plaintiff or a third-party. *See Noonan v. Winston Co*., 135 F.3d 85, 91-92 (1st Cir. 1998) (finding that because alleged principal had no knowledge of how unlawful advertisement targeted the forum, plaintiff's "[forum]-based injury is not enough to support jurisdiction over the defendants.") (citing *Calder,* 465 U.S. at 789-91).

---

[1]     *See also Shanahan v. Nat'l Auto Prot. Corp.*, Case No. 1:19-cv-03788, 2020 U.S. Dist. LEXIS 101031, at *7 (N.D. Ill. June 9, 2020) (specific jurisdiction over defendants in a TCPA case "must arise from the relevant phone call."); *Born v. Celtic Mktg*. *LLC*, No. 8:19-cv-01950-JLS-ADS, 2020 U.S. Dist. LEXIS 89220, at *10 (C.D. Cal. May 20, 2020) (in TCPA cases the relevant inquiry is a purposeful direction analysis to determine whether the party directed calls at the forum).

Plaintiff has failed to carry her burden under this test, because she has not provided any evidence to show that the Matrix Defendants "expressly aimed" any relevant tortious conduct—telemarketing calls—at this forum.  The Matrix Defendants have not made, controlled, or directed any other party to make any calls whatsoever, including any calls to Plaintiff.  There is no dispute here that the Matrix Defendants did not make the calls at issue.  The declaration testimony provided shows that they do not make *any* outgoing marketing calls to consumers, and specifically did not make any calls to Plaintiff. *See* Tuerk Decl. ¶¶ 9-10, ECF No. 21-1.  And Plaintiff neither alleges in her Complaint that the Matrix Defendants made any calls to her, nor provides any evidence in her Opposition that they did.  *See* Compl. ¶¶ 20-27 (no mention of Matrix Defendants at any point during the calls); *see*, *e.g.*, Opp. at 9 ("Because the third-party callers are alleged to have acted as Matrix Defendants' agents when they made the offending calls . . . .").  The only analysis relevant to specific jurisdiction here is whether an agency relationship is plausibly asserted to exist between the party that made the calls at issue and the Matrix Defendants.  But Plaintiff provides nothing in her Complaint or Opposition that *plausibly* shows any such relationship existed.[2]  By Plaintiff's strained logic, a Plaintiff merely needs to make a conclusory allegation, suggest that it is a factually-dependent analysis, and then force Defendants to defend cases in constitutionally impermissible fora just because of his or her *ipse dixit*.  Needless to say, Plaintiff offers no basis to overturn the Supreme Court's controlling, bedrock principles that contradict that assumed-until-disproven theory.

---

[2]      The Matrix Defendants addressed this issue at length in their Motion to Dismiss.  *See* Mem. Supp. Mot. to Dismiss at 10-13, ECF No. 21. The fact that Plaintiff not only fails entirely to provide any evidence to support her claims that such a relationship existed, but completely sidesteps the argument is additional proof that her claims are meritless.

It is well established that in order to assert specific jurisdiction through an agency theory of vicarious liability, the plaintiff must plead plausible allegations to show that an agency relationship existed. *See*, *e.g.*, *Winters v. Grand Caribbean Cruises Inc.*, No. CV-20-00168-PHX-DWL, 2021 U.S. Dist. LEXIS 158176, at *19-20 (D. Ariz. Aug. 20, 2021) ("At bottom, Plaintiffs have failed to plead facts that plausibly suggest an agency relationship exists between [defendant] and the caller."); *Johansen v. HomeAdvisor, Inc.*, 218 F. Supp. 3d 577, 588-89 (S.D. Ohio 2016).[3] And again, when defendants provide evidence controverting the plaintiff's allegations, as is the case here, the plaintiff must present evidence in return to resuscitate those claims. *Wolf*, 745 F.2d at 908.

While Plaintiff pays lip service to this theory of vicarious liability, *see* Opp. at 9, she fails to provide *any* evidence in support, either in her Complaint or in her Opposition. She simply states that a relationship existed, and argues she is able to "figure it out" in discovery. *Id.* at 9, 12. Indeed, she does not allege *any facts* that would make it plausible that the Matrix Defendants directed or controlled the calling party's telemarketing activity here. That glaring omission is fatal to her case. *See*, *e.g.*, *Born*, 2020 U.S. Dist. LEXIS 89220, at *12-13 (dismissing TCPA plaintiff's claims for lack of personal jurisdiction based on agency because allegations did not address "the key element lacking here, namely, the principal's right of control.").

Conversely, Mr. Tuerk's sworn declaration states unequivocally that Plaintiff's broad, conclusory agency allegations are categorically false. Tuerk Decl. ¶ 11. As Mr. Tuerk has

---

[3]     *See also Vysedskiy v. OnShift, Inc.*, C.A. No. 16-12161-MLW, 2017 U.S. Dist. LEXIS 161616, at *13 (D. Mass. Sep. 29, 2017) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980) (holding no jurisdiction existed when a non-agent "made the decisions to call recipients such as plaintiff" because "[t]he mere unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."). The Matrix Defendants provide further analysis of Plaintiff's failure to allege liability through a principal-agent relationship in Section II.C, *infra*.

testified, the Matrix Defendants do not direct or control the operations of any independent third-party that is authorized to market or sell Matrix products on a *non-exclusive basis*. *Id.* at ¶¶ 15-19. These third-parties cannot possibly be construed to be agents of the Matrix Defendants because they sell the products of Matrix competitors alongside Matrix's products—a fact Plaintiff is aware of, as *she herself purchased* the product of a Matrix competitor from one of these third-party marketers. *Id.* at ¶¶ 16-17.

The Matrix Defendants serve only as administrator and obligor of vehicle service contracts. They do not have any role in the marketing of those products, through telemarketing or otherwise. This case has *nothing* to do with the vehicle service products being sold; it is based *only* on the alleged calls of an independent third-party company that is not an agent of the Matrix Defendants.[4] Yet Plaintiff focuses entirely on the terms of vehicle service contracts rather than the calls that form the basis of her claims, displaying the futility of her claims and any related arguments as to personal jurisdiction. *See Hawkins v. i-TV Digitális Távközlési zrt.*, 935 F.3d 211, 230 (4th Cir. 2019) (quoting *Walden*, 571 U.S. at 288 n.7) ("a person cannot be haled into the forum simply because he knew that his conduct would have incidental effects there"); *see also Born*, 2020 U.S. Dist. LEXIS 89220, at *9 (explaining that only the alleged tortious conduct is relevant to

---

[4]      Plaintiff's arguments regarding the terms of vehicle service contracts are misplaced because this is not a contract case in which a purposeful-availment analysis would be appropriate—the terms of that contract are irrelevant. *See All Access Telecom, Inc*., 2021 U.S. Dist. LEXIS 80018, at *7-8 (purposeful availment applies to suits sounding in contract, whereas purposeful direction analysis applies to suits sounding in tort, including TCPA cases); *Komaiko v. Baker Techs., Inc.*, Case No. 19-cv-03795-DMR, 2020 U.S. Dist. LEXIS 70162, at *16 (N.D. Cal. Apr. 20, 2020) ("[P]urposeful availment and purposeful direction are distinct concepts.") (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). Perplexingly, Plaintiff stumbles upon this purposeful-direction test, which is exactly the reason why her irrelevant purposeful-availment argument fails, but mistakenly claims it as a point in her favor. *See* Opp. at 8 ("courts will also consider whether a defendant engaged in some activity *purposefully directed* toward the forum state.").

purposeful direction analysis).   Plaintiff cannot rely on evidence irrelevant to claim-related behavior.[5]  In short, Plaintiff's arguments regarding specific personal jurisdiction fail because she provides no evidence—nor can she—showing that either of the Matrix Defendants purposefully directed or controlled any telephone calls to Plaintiff.

### B.    Plaintiff Fails to Refute the Matrix Defendants' Arguments That This Court Lacks Subject-Matter Jurisdiction Over Count I of the Complaint.

Rather than rebut the arguments put forth in the Motion to Dismiss regarding this Court's lack of subject-matter jurisdiction over Count I, Plaintiff simply ignores them.

Plaintiff states that "this Court has already considered – and rejected – identical arguments on at least two recent occasions."  Opp. at 10-11 (citing *All Access Telecom, Inc.*, 2021 U.S. Dist. LEXIS 80018; *Mey v. MedGuard Alert, Inc.*, CIVIL ACTION NO. 5:19-CV-315, 2021 U.S. Dist. LEXIS 80083, at *1 (N.D.W. Va. Apr. 27, 2021)).  This is not so—as the Matrix Defendants stated in their Motion to Dismiss, this Court's decision in *MedGuard* did not address the retroactive application of *Barr v. American Association of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020) ("*AAPC*") or the Fourth Circuit's severance of the TCPA's robocalling prohibition.[6]  *See* Mem.

---

[5]    This is also why the Court must reject Plaintiff's absurd argument that the Matrix Defendants may be subjected to this Court's jurisdiction because the Matrix Defendants "derive income" or "commercial gain" when their products are sold in this forum.  Opp. at 10.  "An entity cannot be held liable under the TCPA 'merely because they stand to benefit from the call.'" *Landy v. Nat. Power Sources, LLC*, No. 3:21-cv-00425, 2021 U.S. Dist. LEXIS 154637, at *7 (D.N.J. Aug. 16, 2021) (quoting *Klein v. Just Energy Grp., Inc.*, Civil Action No. 14-1050, 2016 U.S. Dist. LEXIS 84447, at *26 (W.D. Pa. June 29, 2016)).  Or, as this Court has aptly stated, "every bar which advertises that they sell a particular brand of beer is not the agent of the brewery whose name they advertise."  *In re Monitronics Int'l, Inc.*, 223 F. Supp. 3d 514, 528 (N.D. W. Va. 2016) (Bailey, J.).  Plaintiff would have this Court believe the opposite: that every bar is an agent of Coors, every sporting goods store is an agent of Nike, and every supermarket is an agent of Coca-Cola, and these companies are subject to jurisdiction in every state where they "derive income" from sales of their products.  Plaintiff's theory bends the Constitution's guarantee of Due Process well past its breaking point.

[6]    This Court's decision in *All Access Telecom* likewise did not analyze whether retroactive application of *AAPC*'s severance was proper.  *See generally All Access Telecom, Inc.*, 2021 U.S. Dist. LEXIS 80018.

Supp. Mot. to Dismiss at 18 n.8.  And Plaintiff offers no response to this position now.  As stated in the Motion, unconstitutional laws are void, and Article III courts cannot afford relief under them for claims that allegedly arose while they were unconstitutional.  *Id.*  Plaintiff cannot avoid making any argument at all by simply pointing to favorable rulings she received in the past, when those rulings did not address the arguments now advanced.[7]

Severance employed to restore a statute to constitutional health does not erase the impermissible unequal treatment caused by the unconstitutional statutory regime, and certainly does not provide for liability for conduct that occurred while the provision was unconstitutional and thus void.  *See Smith v. Cahoon*, 283 U.S. 553, 563-64 (1931) ("[U]ntil such separation [of the invalid provision] has been accomplished by judicial decision, the statute remains with its inclusive purport, and those concerned in its application have no means of knowing definitely what eventually will be eliminated and what will be left.").

The tone of Justice Kavanaugh's opinion in *AAPC*, which is not binding and Plaintiff incorrectly relies on to support her unfounded theory of *AAPC*'s retroactive application, spoke in terms of a present-tense "cure" to a law the Court ruled on July 6, 2020 was unconstitutional as Congress enacted it in 2015 (i.e., *with* Congress's exemption for its own debt-collection calls).

> [T]he First Amendment does not tell us which way to cure the unequal treatment in this case. Therefore, we apply traditional severability principles. And as we have explained, severing the 2015 government-debt exception cures the unequal treatment and constitutes the proper result under the Court's traditional severability principles. In short, the correct result in this case is to sever the 2015 government-debt exception and leave in place the longstanding robocall restriction.

---

[7]     Plaintiff also confusingly argues that the Supreme Court found in *AAPC* that the TCPA, absent the now-severed 2015 amendment, is constitutional, *see* Opp. at 12, which is undisputed and not at issue here.  This argument does not rebut the Matrix Defendants' argument that *AAPC*'s severance cannot be applied retroactively.  *See* Mem. Supp. Mot. to Dismiss at 16-19.  We are not debating the constitutional health of the TCPA post-*AAPC*.  That misses the point.

*AAPC*, 140 S. Ct. at 2355.  That is language connoting a legislative change to the TCPA that could only take effect *that day*.  Congress itself cannot legislate retroactively *nunc pro tunc*, and surely the Supreme Court's severance jurisprudence could not fairly be said to include a quasi-legislative remedial authority that Congress itself does not possess.  *Cf. id*. at 2351 ("the presumption [in favor of severability] manifests the Judiciary's respect for Congress's legislative role by keeping courts from unnecessarily disturbing a law apart from invalidating the provision that is unconstitutional.").

*AAPC*'s severance did not retroactively cure the unconstitutional nature of the TCPA's autodialer provision that existed while the government-debt exemption was in place from 2015 until July 6, 2020.  Plaintiff has given this Court no credible authority on which to rest jurisdiction for a claim that depends on a law that the Supreme Court has clearly held was unconstitutional during the period at issue here.  The Court should therefore dismiss Count I.

### C.    Plaintiff Failed to State a Claim Under Rule 12(b)(6).

Plaintiff attempts to side-step the requirements of Rule 8's pleading standard by claiming she need not plausibly allege how the Matrix Defendants allegedly controlled or directed the calls at issue.  Instead, she waves away this well-established pleading standard, creating her own lesser standard that allows her to lob unsupported conclusory allegations and figure things out in discovery.  *See* Opp. at 12 (claiming "Matrix Defendants ask for more than is required at this juncture" because they "argue that Ms. Mey failed to plausibly allege that the Matrix Defendants were responsible for the offending calls.").   This artificial standard contradicts controlling Supreme Court precedent.  Requiring a plaintiff to plausibly allege a defendant's connection to the claims at issue is the bare minimum required to overcome a motion under Rule 12(b)(6).  *See Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief *that is plausible on its face*.'" (emphasis added) (quoting *Twombly*, 550 U.S. at 570)) .

While Plaintiff may wish it otherwise, this standard still applies to TCPA cases such as this one.  *See*, *e.g.*, *Winters v. Grand Caribbean Cruises Inc.*, No. CV-20-00168-PHX-DWL, 2021 U.S. Dist. LEXIS 158176, at *19-20 (D. Ariz. Aug. 20, 2021) ("Plaintiffs have failed to plead facts *that plausibly suggest* an agency relationship exists between [defendant] and the caller. Although Plaintiffs argue that agency is a fact-intensive inquiry that should not [be] resolved at the motion-to-dismiss stage, courts routinely do so.").[8]  Plaintiff's refusal to allege any facts showing how the Matrix Defendants are in any way responsible for the calls at issue—which everyone admits were made by other parties—reveals the insufficiencies of her allegations.  Indeed, her claim that she can toss out the bare conclusion that the Matrix Defendants had *some connection* to the calls at issue here, and then fill in the blanks in discovery turns the Supreme Court's standard on its head. The Supreme Court's pleading standard in *Twombly* and *Iqbal* demands that a plaintiff put forth more than threadbare conclusion like the ones Plaintiff makes here in order to proceed to discovery. *See Iqbal*, 556 U.S. at 678-79 ("[Rule 8] does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

Plaintiff fails to allege facts sufficient to plausibly show the Matrix Defendants are vicariously liable for the calls at issue.  Plaintiff's entire theory rests on the fact that because she was offered a Matrix product, Matrix must somehow have controlled the call marketing that

---

[8]      *See also Landy,* 2021 U.S. Dist. LEXIS 154637, at *13 ("[Plaintiff's] complaint does not allege enough facts to indicate that there was an agency relationship between the initial caller and [defendant]. As such, he has failed to allege that [defendant] can be held vicariously liable for the initial caller's TCPA violations."); *Hurley v. Messer*, CIVIL ACTION NO. 3:16-9949, 2018 U.S. Dist. LEXIS 171588, at *19 (S.D. W. Va. Oct. 4, 2018) (dismissing TCPA plaintiff's claims because "[e]ven construing liberally, the closest Plaintiff comes to alleging non-formal agency leads to a non-sensical hodgepodge of facts.").

product.  As stated above, by Plaintiff's absurd logic, Coca-Cola could be subjected to jurisdiction nationwide and found liable for the actions of any supermarket selling its products.  This is simply not plausible—and already properly rejected by this Court in *Monitronics*—and Plaintiff's claims against the Matrix Defendants must therefore be dismissed in their entirety.

In support of her misplaced argument relating to the Rule 12(b)(6) motion, Plaintiff merely cites a single decision, in which she formerly succeeded in overcoming a Motion to Dismiss before this Court.  *See* Opp. at 12-13 (citing *Mey v. Medguard Alert, Inc.*, No. 5:19-cv-315 (BAILEY), 2020 U.S. Dist. LEXIS 44905, at *8 (N.D.W. Va. Mar. 16, 2020)).   However, *Medguard* is distinguishable from this case because in *Medguard*, there were allegations that the party that made the call(s) at issue was a d/b/a of the defendant *and* she was charged by the defendant for the purchase she made on the call.  *Medguard Alert, Inc.*, 2020 U.S. Dist. LEXIS 44905, at *8.  Here, there are no such allegations—Plaintiff does not allege she was called by Matrix, nor that was she charged by Matrix for any purchase.  Compl. ¶¶ 20-31.  Indeed, Plaintiff alleges that she herself had to actively look for Matrix on the internet after receiving an email from Hard Tack.  *Id.* ¶¶ 28-30.  Plaintiff admittedly has never had any communication with Matrix, and she does not allege that anyone she did actually communicate with stated that they were acting under Matrix's direction or control.  Plaintiff's argument here is the equivalent of claiming Coca-Cola can be liable for any convenience store unlawfully marketing its products because the cans display Coca-Cola's name on them.

The Matrix Defendants set forth at length in their Motion to Dismiss that Plaintiff has not plausibly alleged direct liability can apply to either Matrix Defendant because Plaintiff has provided zero factual support that either of the Matrix Defendants ever made any call to her.  *See* Mem. Supp. Mot. to Dismiss at 20-21.  Likewise, Plaintiff has not plausibly alleged any theory of

vicarious liability, as selling a party's products does not *ipso facto* establish a principal-agent relationship. *Id.* at 21-25. And Plaintiff provides no support that either Matrix Defendant directed or controlled the actions of any party responsible for the calls at issue. *See Winters*, 2021 U.S. Dist. LEXIS 158176, at *19-20 ("Plaintiffs have failed to plead facts that plausibly suggest an agency relationship exists between [defendant] and the caller.").

Plaintiff does not rebut any of the arguments in the Motion because she cannot. She simply points to the terms in the products being sold, the vehicle service contracts, which have nothing at all to do with how those products were marketed to her. As further proof of the bare conclusory nature of Plaintiff's claims, she herself does not even know where to point, and instead asks the Court to conclude, based only on the existence of vehicle service contracts that have nothing to do with calls, that the Matrix Defendants are directly *or* vicariously liable for the calls at issue. Opp. at 13. It was Plaintiff's burden to plausibly allege either of these theories of liability. She has not done so, and her claims should therefore be dismissed.

## III.    CONCLUSION

The Matrix Defendants respectfully move this Court to enter an Order dismissing Plaintiff's Complaint as to the Matrix Defendants for lack of personal jurisdiction; should it retain this case, the Court should nevertheless dismiss Count I with prejudice for lack of subject-matter jurisdiction, and dismiss Plaintiff's entire Complaint against the Matrix Defendants for failure to state a claim.

Dated: August 30, 2021

Respectfully submitted,

**MATRIX WARRANTY SOLUTIONS, INC.**

and

**MATRIX FINANCIAL SERVICES, LLC**

By Counsel

   */s/ Gordon H. Copland*
Gordon H. Copland (WV Bar No. 828)
**STEPTOE & JOHNSON PLLC**
400 White Oaks Boulevard
Bridgeport, WV 26330
T: (304) 933-8162
F: (304) 933-8601
gordon.copland@steptoe-johnson.com

Kristen Andrews Wilson  (WV Bar No.11342)
**STEPTOE & JOHNSON PLLC**
1233 Main Street, Ste. 3000
P.O. Box 751
Wheeling, WV  26003-075
T: (304) 231-0444
F: (304) 233-0014
kristen.andrews-wilson@steptoe-johnson.com

and

Joseph P. Bowser, *admitted pro hac vice*
 (VA State Bar/Federal Bar No. 88399)
ROTH JACKSON
1519 Summit Avenue, Suite 102
Richmond, VA 23230
T: 804-441-8701
F: 804-441-8438
jbowser@rothjackson.com

Ashley B. Kyle, *admitted pro hac vice*
 (VA State Bar/Federal Bar No. 76951)
ROTH JACKSON
8200 Greensboro Drive, Suite 820
McLean, Virginia
T: 703-485-3520
F: 703-485-3525
akyle@rothjackson.com

16

## CERTIFICATE OF SERVICE

I certify that on this 30th day of August 2021, I electronically filed the foregoing "Reply in Support of Matrix Warranty Solutions, Inc. and Matrix Financial Services, LLC's Motion to Dismiss" with the Clerk of the Court using the CM/ECF system, which will send notice of the same to counsel and to registered attorneys as follows:

**Andrew C. Robey**
**Ryan McCune Donovan**
Hissam Forman Donovan Ritchie PLLC
707 Virginia Street, East Suite 260
Post Office Box 25301
Charleston, WV 25301
Email: arobey@hfdrlaw.com
       Rdonovan@hfdrlaw.com

**James G. Bordas , III**
**Bordas & Bordas, PLLC**
1358 National Rd
Wheeling, WV 26003
(304) 242-8410
Fax: 304-242-3936
Email: jbordasiii@bordaslaw.com

**Jeffrey Earl Parsons**
**Bordas & Bordas, PLLC - Moundsville**
526 7th Street
Moundsville, WV 26041
(304) 242-8410
Fax: (304) 242-3936
Email: jparsons@bordaslaw.com

*Attorneys for Plaintiff*

**Patrick R. Hanes**
**Williams Mullen**
200 South 10th Street
Suite 1600
Richmond, VA 23219
804-420-6455
Email: phanes@williamsmullen.com

*Attorney for SING for Service, LLC*

   */s/ Gordon H. Copland*
Gordon H. Copland (WV State Bar No. 828)
Steptoe & Johnson PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330
T: (304) 933-8162
F: (304) 933-8601
gordon.copland@steptoe-johnson.com