**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**Wheeling**

**DIANA MEY,** on behalf of herself and
a class of others similarly situated,

        Plaintiff,

v.
                           **Civil Action No. 5:21-CV-62**
                           Judge Bailey

**MATRIX WARRANTY SOLUTIONS, INC.,**
**MATRIX FINANCIAL SERVICES, LLC,**
**SING FOR SERVICE, LLC,**
**JOHN DOE DEFENDANTS 1-5,** and
**HARDTACK, INC.,**

        Defendants.

## ORDER DENYING DEFENDANTS MATRIX WARRANTY SOLUTIONS, INC. AND MATRIX FINANCIAL SERVICES, LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Presently pending before this Court is Defendants Matrix Warranty Solutions, Inc. and Matrix Financial Services, LLC's Motion to Dismiss Plaintiff's Complaint [Doc. 20], filed June 25, 2021. Plaintiff filed Plaintiff's Response in Opposition to Defendants' Motion to Dismiss [Doc. 33] on August 16, 2021. Defendants Matrix Warranty Solutions, Inc. and Matrix Financial Services, LLC filed a Reply in Support of Their Motion to Dismiss [Doc. 40] on August 30, 2021. The Motion is now fully briefed and ripe for decision. For the reasons that follow, the Court will deny the Motion.

## BACKGROUND

This case arises out of the allegation that defendants violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. In the Complaint, plaintiff alleges

1

"[d]efendants and their agents, acting as a common enterprise to promote and sell extended consumer warranties, knowingly engaged in a pattern and practice of illegal telemarketing in violation of the TCPA." *See* [Doc. 1 at 1]. Plaintiff alleges that defendants and their agents violated the TCPA in two ways: (1) by initiating calls to Ms. Mey and other putative class members whose numbers are registered on the National Do Not Call Registry and (2) initiating calls to Ms. Mey and other putative class members using artificial or prerecorded messages. [Id. at 1–2]. Ms. Mey brings certain of her claims on behalf of a proposed nationwide class of persons who also received illegal telephone calls from or on behalf of defendants because the calls to Ms. Mey were transmitted using technology capable of generating thousands of similar calls per day. *See* [Id. at 2].

On July 25, 2021, defendants Matrix Warranty Solutions, Inc. and Matrix Financial Services, LLC ("the Matrix Defendants") filed the instant Motion and accompanying Memorandum of Support [Docs. 20 & 21]. Therein, the Matrix Defendants state there are "three threshold defects" that plaintiff's Complaint suffers from. First, plaintiff's Complaint fails to allege a plausible basis for this Court to assert personal jurisdiction over the Matrix Defendants. *See* [Doc. 21 at 2 & 9–14]. Second, this Court lacks subject-matter jurisdiction over Count I of plaintiff's Complaint. *See* [Id. at 14–20]. Third, even if this Court could exercise personal jurisdiction over the Matrix Defendants or hear claims under Count I of plaintiff's Complaint, this Court should dismiss the Complaint for its failure to plausibly state any claims against the Matrix Defendants. *See* [Id. at 21–26].

In response, plaintiff states the three arguments advanced by the Matrix Defendants should be rejected for the following reasons:

2

*First*, the Matrix Defendants suggest that this Court is without personal jurisdiction because Matrix has insufficient contacts with the forum state. But Ms. Mey's Complaint identifies two separate service contracts, each demonstrating that the Matrix Defendants regularly provide warranty services to consumers in the State of West Virginia. Because these contracts give rise to this litigation, personal jurisdiction exists. *Second,* the Matrix Defendants suggest that the Supreme Court's decision in ***Barr*** [***v. Amer. Ass. of Political Consultants, Inc.***, 140 S. Ct. 2335 (2020)] deprives this Court of subject matter jurisdiction. But this Court has already considered–and rejected–identical arguments in at least two recent cases. Matrix Defendants provide no basis for this Court to depart from its prior decisions. *Finally,* despite moving under Rule 12(b)(6), the Matrix Defendants attempt to argue the merits of the case. But at this juncture, Ms. Mey need only plausibly allege that Matrix Defendants were responsible for the offending calls.

[Doc. 33 at 1–2].

On August 30, 2021, the Matrix Defendants filed a Reply arguing that plaintiff's Opposition "fails to address the key arguments in the Matrix Defendants' Motion to Dismiss" and she "simply chooses to reprise her allegations about calls she received from another party, and invites the Court to ignore applicable Supreme Court precedent regarding the constitutional and pleading defects in [her] claims against the Matrix Defendants, whom all parties agree have never made a single interaction with Plaintiff."

3

*See* [Doc. 40].  The Matrix Defendants lay out three arguments in their reply.  First, the Matrix Defendants allege that plaintiff fails to provide any factual support to show that this Court may assert personal jurisdiction over them.  *See* [Id. at 4–10].  Second, the Matrix Defendants argue that plaintiff fails to refute their argument that this Court lacks subject-matter jurisdiction over Count I of plaintiff's Complaint.  *See* [Id. at 10–12].  Third, the Matrix Defendants argue that plaintiff has failed to state a claim under Rule 12(b)(6).  *See* [Id. at 12–15].

<u>**LEGAL STANDARDS**</u>

I.      **Rule 12(b)(2)**

Once a defendant challenges personal jurisdiction, the plaintiff bears the burden of producing facts that support the existence of jurisdiction.  *See Carefirst of Md., Inc. v. Carefirst Pregnancy Crisis Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) ("When personal jurisdiction is properly challenged under Rule 12(b)(2), the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff.").  Ultimately, plaintiffs must establish personal jurisdiction by a preponderance of the evidence.  *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005); *Carefirst of Md., Inc.*, 334 F.3d at 396.  At this stage of the case, however, a plaintiff must establish a prima facie case for the exercise of personal jurisdiction by pointing to affidavits or other relevant evidence.  *See New Wellington Fin. Corp.*, 416 F.3d at 294; *Carefirst of Md., Inc.*, 334 F.3d at 396.

4

## II.      Rule 12(b)(1)

A party may move to dismiss an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The burden of proving subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss is on the party asserting federal jurisdiction. A trial court may consider evidence by affidavit, deposition, or live testimony without converting the proceeding to one for summary judgment. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *Mims v. Kemp*, 516 F.2d 21 (4th Cir. 1975). Because the court's very power to hear the case is at issue in a Rule 12(b)(1) motion, the trial court is free to weigh the evidence to determine the existence of its jurisdiction. No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *See Materson v. Stokes*, 166 F.R.D. 368, 371 (E.D. Va. 1996). Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action. *See* Fed. R. Civ. P. 12(h)(3).

## III.     Rule 12(b)(6)

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (applying the *Twombly* standard and emphasizing the necessity of *plausibility*). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences

in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. *Anheuser-Busch, Inc. v. Schmoke*, 63 F.3d 1305, 1312 (4th Cir. 1995). In *Twombly*, the Supreme Court, noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *Id*. at 1964–65, upheld the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible." *Id*. at 1974.

"Matters outside of the pleadings are generally not considered in ruling on a Rule 12 Motion." *Williams v. Branker*, 462 F. App'x 348, 352 (4th Cir. 2012). "Ordinarily, a court may not consider any documents that are outside of the Complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006). However, the Court may rely on extrinsic evidence if the documents are central to a plaintiff's claim or are sufficiently referred to in the Complaint. *Id*. at 396–97.

## DISCUSSION

### I.     Rule 12(b)(2)

The Matrix Defendants argue that plaintiff's claims against them should be dismissed because this Court lacks personal jurisdiction over the Matrix Defendants.

6

"[T]o validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied." *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and second, the exercise of personal jurisdiction must not "overstep the bounds" of the Fourteenth Amendment's Due Process Clause. *Anita's N.M. Style Mexican Food, Inc. v. Anita's Mexican Foods Corp.*, 201 F.3d 314, 317 (4th Cir. 2000).

West Virginia's long-arm statute extends to the constitutional maximum permitted by the Due Process Clause. W.Va. Code § 56-3-33; *see also Touchstone Research Lab., Ltd. v. Anchor Equip. Sales, Inc.*, 294 F.Supp.2d 823, 827 (N.D. W.Va. 2003) (Stamp, J.). Thus, in West Virginia, the issue of personal jurisdiction is simple: whether the exercise of personal jurisdiction would comport with the Due Process Clause. *See Williams v. Adver. Sex LLC*, 2007 WL 2570182, at *3 (N.D. W.Va. Aug. 31, 2007) (Keeley, J.); *see also Christian Sci. Bd. of Dirs. v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001).

The scope of this Court's inquiry is therefore whether a defendant has "certain minimum contacts" with the forum, such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). A defendant has minimum contacts with a state when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Under this standard, "it is essential in each

7

case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

The analytical framework for determining whether personal jurisdiction exists differs according to which type of personal jurisdiction–general or specific–is alleged. *See generally ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623–24 (4th Cir. 1997). When a cause of action arises out of a defendant's contacts with the forum, a court may seek to exercise specific jurisdiction over a defendant that purposefully directs activities toward the forum state and the litigation results from alleged injuries that arise out of or relate to those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985). When the cause of action does not arise out of a defendant's contacts with the forum, general jurisdiction may be exercised upon a showing that the defendant's contacts are of a "continuous and systematic" nature." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).

A.    **General Jurisdiction**

General jurisdiction is exercisable when the defendant has continuous and systematic contacts with the forum state. *ALS Scan, Inc. v. Digit. Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). "General jurisdiction may be exercised when the defendant has contacts with the forum jurisdiction that are 'so constant and pervasive as to render it essentially at home in the forum State.'" *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 131–132 (4th Cir. 2020) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014)). A corporation is "regarded as at home [in] the forums where it is incorporated and

8

where it has its principal place of business." *Fidrych*, 952 F.3d at 132 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011)). The hallmark of general jurisdiction is that the defendants' contact with the forum state is so extensive that it should foresee being hailed into court. *See World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

In the Complaint, plaintiff sets forth that defendant Matrix Warranty Solutions, Inc. is a Nevada corporation with a principal place of business in Dallas, Texas, and defendant Matrix Financial Services, LLC is a Delaware limited liability company with a principal place of business in Dallas, Texas. *See* [Doc. 1 at 2]. Accordingly, this Court finds that it does not have general personal jurisdiction over the Matrix Defendants.

**B.     Specific Jurisdiction**

Because this Court may not exercise general jurisdiction over the Matrix Defendants, this Court must now consider whether specific jurisdiction will permit this Court to exercise jurisdiction over the Matrix Defendants. Plaintiff alleges that this Court has specific personal jurisdiction because the two separate service contracts demonstrate that the Matrix Defendants regularly provide warranty services to consumers in West Virginia. *See* [Doc. 33 at 1].

The Fourth Circuit applies a three-part test when evaluating the propriety of exercising specific jurisdiction: (1) whether and to what extent the defendant purposely availed itself of the privileges of conducting activities in the forum state, and thus invoked the benefits and protections of its laws; (2) whether the plaintiff's claims arise out of those forum-related activities; and (3) whether the exercise of jurisdiction is constitutionally

"reasonable." *Nolan*, 259 F.3d at 215–16 (citing *Helicopteros*, 466 U.S. at 414–16; *Burger King*, 471 U.S. at 472, 476–77).

The first inquiry concerns whether a defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S.Ct. 2780, 2788 (2011) (quoting *Hanson*, 357 U.S. at 253). The "purposeful availment" element ensures that a defendant will not be haled into court in a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts or the unilateral activity of another person or third party. *Burger King*, 471 U.S. at 475. Even a single contact with the forum state can constitute purposeful availment sufficient to satisfy due process requirements. *Id*. at 475 n.18 ("So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction."). The Fourth Circuit has held that a "single transaction is a sufficient contact to satisfy [due process] if it gives rise to the liability asserted in the suit." *Hardy v. Pioneer Parachute Co.*, 531 F.2d 193, 195 (4th Cir. 1976).

The Matrix Defendants argue that plaintiff cannot establish purposeful availment because plaintiff "has not shown that the Matrix Defendants have purposefully directed themselves to this jurisdiction with respect to the calls third parties may have made to Plaintiff." *See* [Doc. 21 at 11]. The Matrix Defendants attached the declaration of Jay Tuerk, the Matrix Defendants' President, who has "personal knowledge, including knowledge gained in [his] position as President of [the Matrix Defendants']." *See* [Doc. 21-1]. Tuerk asserts that: (1) Matrix Warranty is a Nevada corporation with its principal place of business in Texas; (2) Matrix Financial is a Delaware corporation with its principal place

10

of business in Texas; (3) the Matrix Defendants do not own or lease any property, or own or maintain any assets, in West Virginia; (4) the Matrix Defendants have never conducted business operations of any kind from West Virginia. *See* [Id. at 2–3]. Furthermore, the declaration also explains that defendant Matrix Warranty administers extended automobile warranty plans, and defendant Matrix Financial acts as an insurer and guarantor for anticipated liabilities under the extended automobile warranty plans administered by defendant Matrix Warranty. [Id.]. Mr. Tuerk states that the Matrix Defendants do not directly or indirectly initiate any outbound sales calls to consumers and did not directly or indirectly initiate any of the alleged calls to plaintiff in April 2017, May 2017, June 2017 or April 2020; however, the Matrix Defendants do concede that the only call to plaintiff that they understand to have had any connection to a Matrix-administered product occurred in April 2020. [Id.]. The declaration also states that "any allegation by Plaintiff that a telemarketing call associated with a Matrix Warranty product was made 'through one or more intermediaries' of, or 'on behalf of,' either of the Companies is erroneous because the Companies do not confer that authority on telemarketing companies; nor do they control (or have the right to control) those companies' telemarketing practices, in large part because, at the time telemarketing calls are initiated to potential customers, the representatives have not yet accessed the available policies which are usually obtained through conversations during which the consumers provide the vehicles' make, model, and mileage and other factors in the sales and marketing processes, such as the consumer's interests and budget." [Id. at 6].

In response, plaintiff argues that the Matrix Defendants have purposefully availed themselves of the privilege of conducting business in West Virginia. *See* [Doc. 33 at 6].

11

As an example, plaintiff states that the Matrix Defendants profit from their exposure to the West Virginia market by offering warranty services to West Virginia consumers. *See* [Id. at 6–8]. Moreover, relying on ***Burger King Corp. v. Rudzewicz***, 471 U.S. 462, 476 (1985), plaintiff argues that even though the Matrix Defendants are not physically present in West Virginia, personal jurisdiction is established because the Matrix Defendants transact with West Virginia consumers. *See* [Id. at 8–9]. Furthermore, plaintiff argues that a principal, the Matrix Defendants, may be held liable under the TCPA for the acts of an agent, and because the third-party callers are alleged to have acted as the Matrix Defendants' agents when making the offending calls, those calls are attributed to the Matrix Defendants for the purpose of determining personal jurisdiction. *See* [Id.].

In reply, the Matrix Defendants argue that plaintiff's argument regarding specific personal jurisdiction fails because she provides no evidence—nor can she—showing that either of the Matrix Defendants purposefully directed or controlled any telephone calls to plaintiff. *See* [Doc. 40 at 10].

This Court disagrees. "[E]ven when a defendant does not 'initiate' a call, it 'may be held vicariously liable under federal common law principles of agency for TCPA violations committed by [a] third-party." ***Mey v. Venture Data, LLC***, 245 F.Supp.3d 771, 786 (N.D. W.Va. Mar. 29, 2017) (Bailey, J.) (quoting ***In the Matter of the Joint Petition Filed by Dish Network, LLC***, 28 FCC Rcd. 6574, 6584 (2013)).

The Matrix Defendants state that "[i]t is well established that in order to assert specific jurisdiction through an agency theory of vicarious liability, the plaintiff must plead plausible allegations to show that an agency relationship existed." [Doc. 40 at 8].

12

However, as this Court laid out in *Mey v. Venture Data, LLC*:

"In *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 468 (6th Cir. 2010), the Sixth Circuit was faced with the issue of whether the TCPA and its accompanying regulations permitted a plaintiff to recover damages under Sections 227(b) and (c) from a defendant that did not place any illegal calls but whose independent contractors did so in attempts to sell the products and services of the defendant. The Sixth Circuit invoked the doctrine of primary jurisdiction and referred the matter to the Federal Communications Commission ("FCC") to allow the agency to interpret certain provisions of the TCPA and its accompanying regulations.  The FCC issued a declaratory ruling clarifying that, even though a seller may not have initiated or made a call under the TCPA, the seller may nonetheless be vicariously liable under the TCPA based on federal common law principles of agency for violations of Sections 227(b) and (c) that are committed when a third-party telemarketer initiates or places an unlawful call on behalf of the seller. *In re Dish Network, LLC*, 28 FCC Rcd. 6574, 2013 WL 1934349 (May 9, 2013)." *Cunningham v. Kondaur Capital*, 2014 WL 8335868, at *5 (M.D. Tenn. Nov. 19, 2014), report and recommendation approved, 2015 WL 1412737 (M.D. Tenn. Mar. 26, 2015).

The FCC opined that "a seller cannot avoid liability simply by delegating placing the call to a third-party. The FCC determined that 'while a seller does not generally "initiate" calls made through a third-party

telemarketer within the meaning of the TCPA, it nonetheless may be held vicariously liable under federal common law principles of agency for violations of [ ] section 227(b) ... that are committed by third-party telemarketers.' See *Id*. at 6574. This includes 'a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification.' Id. at 6584." ***Hossfeld v. Gov't Employees Ins. Co.***, 88 F.Supp.3d 504, 510 (D. Md. 2015) (Quarles, J.).

The FCC also stated:

[T]he seller is in the best position to monitor and police TCPA compliance by third-party telemarketers.... We thus agree that, consistent with the statute's consumer protection goals, potential seller liability will give the seller appropriate incentives to ensure that their telemarketers comply with our rules.... By contrast, allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case.... Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make

enforcement in many cases substantially more expensive and

less efficient, since consumers (or law enforcement agencies)

would be required to sue each marketer separately in order to

obtain effective relief.

*Melito v. Am. Eagle Outfitters, Inc.*, 2015 WL 7736547, at *5 (S.D.N.Y.

Nov. 30, 2015), quoting 28 FCC Rcd. at 6588.

Even though the Matrix Defendants may not have directly called plaintiff, plaintiff has

provided sufficient facts for this Court to reasonably infer that the Matrix Defendants are

directly responsible for the telemarketing calls or that the calls were made by a vendor

under the Matrix Defendants control.  The allegations made by the plaintiff in her Complaint

plausibly connect the Matrix Defendants to the alleged calls and therefore are sufficient to

state a claim under the TCPA.

II.      **Rule 12(b)(1)**

Second, this Court turns to the Matrix Defendants' argument that the Court lacks

subject matter jurisdiction over Count I of the Complaint, which alleges violations of the

automated-call provision of the TCPA.  As stated by the plaintiff, this Court has already

considered – and rejected – identical arguments on at least two occasions.  *See Mey v.*

*Medguard Alert, Inc.*, 2021 WL 1652945, at *2–3 (N.D. W.Va. Apr. 27, 2021) (Bailey, J.);

*Mey v. John Doe Defendant I, et al.*, Civ. Act. No. 5:19-CV-237 [Doc. 126] (N.D. W.Va.

Apr. 23, 2021).  This Court recently dealt with the same arguments regarding the impact

of *Barr v. Amer. Assn. of Political Consultants, Inc.* in *Mey v. John Doe Defendant I,*

*et al.*:

Certain defendants contend that Count I of plaintiff's Second Amended Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1), because this Court lacks subject matter jurisdiction, in that § 227(b)(1)(A) of the TCPA was unconstitutional during the time the calls on which plaintiff rests her claims were made.

In *Barr v. Amer. Assn. Of Political Consultants, Inc.*, 140 S.Ct. 2335 (2020) ("*Barr*"), the Supreme Court, in a fractured decision, held that the 2015 amendment to the TCPA exempting calls seeking collection of debts to the Government was unconstitutional.

While the district courts are split on the issue of whether *Barr* has any effect on the liability of calls other than Government collection calls, the weight of authority appears to be to the effect that those calls and callers are unaffected by *Barr*.

In *Barr*, "Justice Kavanaugh, joined by the Chief Justice and Justice Alito, concluded in Parts I and II that this amendment was unconstitutional because it favored debt-collection speech over political or other speech in violation of the First Amendment. 140 S.Ct. at 2342–48. In Part III, these three Justices concluded that the 2015 amendment should be severed leaving the bulk of the TCPA intact. *Id*. at 2348–56. Justice Sotomayor, who concurred, would have based Parts I and II on a different ground (applying intermediate as opposed to strict scrutiny to the speech) but concurred in the conclusion and in Part III with respect to severability. *Id*. at 2356–57.

Justices Breyer, Ginsburg and Kagan, who dissented in part, disagreed that the amendment violated the First Amendment, but ultimately concurred with Part III finding the amendment severable. *Id*. at 2357–63. Justices Gorsuch and Thomas agreed with Parts I and II that the amendment was unconstitutional but dissented on the issue of severability. *Id*. at 2363–67. Thus, '[s]ix Members of the Court ... conclude[d] that Congress ha[d] impermissibly favored debt-collection speech over political and other speech in violation of the First Amendment' and '[s]even Members of the Court conclude[d] that the entire 1991 robocall restriction should not be invalidated, but rather that the 2015 government-debt exception must be invalidated and severed from the remainder of the statute.' *Id*. at 2343." ***McCurley v. Royal Sea Cruises, Inc.***, 2021 WL 288164 (S.D. Cal. Jan. 28, 2021).

As the Court noted, "the general rule is that 'an unconstitutional statutory amendment "is a nullity" and "void" when enacted, and for that reason has no effect on the original statute.' ***AAPC***, 140 S.Ct. at 2353 (quoting ***Frost v. Corp. Comm'n of Okla.***, 278 U.S. 515, 526–27 (1929)). If the government debt exception provision was void at its inception in 2015, it would have no effect on the pre-2015 text of the statute. Since there are no constitutional defects to the pre-2015 text, the statute's enforceability is unaffected by the amendment. The conduct at issue here was not impacted by the exception." ***Less v. Quest Diagnostics Inc.***, 2021 WL 266548, at *1 (N.D. Ohio Jan. 26, 2021) (Zouhary, J.).

17

In his decision, Justice Kavanaugh directly addressed the issue, stating:

> [A]lthough our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case, or such date that the lower courts determine is appropriate. . . . On the other side of the ledger, **our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction.**

140 S.Ct. at 2355, n.12.

The cases which are relied upon by the defendants dismissed the above footnote as dicta.   *See Lindenbaum v. Realgy, LLC,* 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020),   *Creasy v. Charter Comm'ns Inc.,* 2020 WL 5761117 (E.D. La. Sept. 28, 2020) and *Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.,* 2020 WL 7346536 (M.D. Fla. Dec. 11, 2020).

As noted in *McCurley*, *supra*:

> Even if it was only dicta, as argued by Defendant, the district court is not at liberty to completely ignore this pronouncement.
>
> *See, e.g., United States v. Montero-Camargo,* 208 F.3d

18

1122, 1133 n.17 (9th Cir. 2000) ("Supreme Court dicta have a weight that is greater than ordinary judicial dicta as prophecy of what the court might hold; accordingly we do not blandly shrug them off because they were not a holding.") (quotation omitted). The Eleventh Circuit articulately explained:

> We have always believed that when the Founders penned Article III's reference to the judicial power being rested 'in one Supreme Court and in such inferior Courts' as Congress may establish, they used 'superior' and 'inferior' as contrasting adjectives, with us being on the short end of the contrast. It would never occur to us[] to tell the Supreme Court that we would decide our cases based on our analysis of its decisions, not its own analysis of them if that analysis had been announced in a case where it was not essential to the result.... [T]here is dicta, and then there is Supreme Court dicta.

*Schwab v. Crosby*, 451 F.3d 1308, 1325 (11th Cir. 2006) (citation omitted). The Eleventh Circuit cites numerous cases recognizing that "dicta from the Supreme Court is not something to be lightly cast aside." *Id.*; *see, e.g., McCoy v.*

*Mass. Ins. of Tech.*, 950 F.2d 13, 19 (1st Cir. 1991) ("We think that federal appellate courts are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings, particularly when ... a dictum is of recent vintage and not enfeebled by any subsequent statement."); *Official Comm. Of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 561 (3rd Cir. 2003) (en banc) ("Although the Committee is doubtless correct that the Supreme Court's dicta are not binding on us, we do not view it lightly."); *Wynne v. Town of Great Falls*, 376 F.3d 292, 298 n.3 (4th Cir. 2004) ("[W]ith inferior courts, like ourselves ... carefully considered language of the Supreme Court, even if technically dictum, generally must be treated as authoritative."); *United States v. Becton*, 632 F.2d 1294, 1296 n.3 (5th Cir. 1980) ("We are not bound by dicta, even of our own court.... Dicta of the Supreme Court are, of course, another matter.").

*McCurley*, 2021 WL 288164, at *3.

Most telling, in *American Assoc. of Political Consultants, Inc. v. FCC*, 923 F.3d 159 (4th Cir. 2019), the decision which was affirmed by *Barr*, the Court held:

The Plaintiffs maintain in their appellate submissions that the constitutionally flawed debt-collection exemption invalidates the entirety of the automated call ban, rendering severance of the debt-collection exemption improper.  The Government argues, however, that the controlling authorities require a severance of the exemption from the automated call ban.

For several reasons, we agree with the Government on the severance issue.  First and foremost, the explicit directives of the Supreme Court and Congress strongly support a severance of the debt-collection exemption from the automated call ban.  Furthermore, the ban can operate effectively in the absence of the debt-collection exemption, which is clearly an outlier among the statutory exemptions.

In circumstances such as these, the Supreme Court has recognized that severance is the preferred remedy.  As the Chief Justice explained in the Court's *NFIB v. Sebelius* decision, if Congress wants the balance of a statute to stand when one aspect is constitutionally flawed, a reviewing court "must leave the rest of the [statute] intact." *See* 567 U.S. 519, 587 (2012). By severing the flawed portion of a statute, the court can limit the impact of its ruling of constitutional infirmity. *See Ayotte v. Planned Parenthood of N. New Eng.*, 546

U.S. 320, 328 (2006); *United States v. Under Seal*, 819 F.3d 715, 721–22 (4th Cir. 2016) (recognizing that severance of a flawed portion of a statute prevents a court from nullifying too much of that enactment).  The general rule is thus "'that partial … invalidation [of a statute] is the required course.'" *See Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 508 (2010) (quoting *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 504 (1985)).

Complementing the Supreme Court's strong preference for a severance in these circumstances, Congress has explicitly mandated that, if a TCPA provision is determined to be constitutionally infirm, severance is the appropriate remedy.  That is, Congress has directed that, if any part of the TCPA "is held invalid, the remainder … shall not be affected." *See* 47 U.S.C. § 608.  That severability provision eases our inquiry on the severance issue and creates "a presumption that Congress did not intend the validity of the statute in question to depend on the validity of the constitutionally offensive provision." *See Alaska Airlines*, 480 U.S. at 686 (citing *INS v. Chadha*, 462 U.S. 919, 932 (1983)).  As a result, severance of the debt-collection exemption from the balance of the automated

22

call ban will comply with the explicit directive of Congress and with controlling Supreme Court precedent.

We are also satisfied that a severance of the debt-collection exemption will not undermine the automated call ban. For twenty-four years, from 1991 until 2015, the automated call ban was "fully operative." *Free Enter. Fund*, 561 U.S. at 509 (citations and internal quotation marks omitted). As a result, the Plaintiffs simply cannot show that excising the debt-collection exemption will hamper the function of the ban. *See Alaska Airlines*, 480 U.S. at 686 (explaining that only "strong evidence" overcomes presumption created by severability clause). In these circumstances, we agree with the Government and direct the severance of the debt-collection exemption from the balance of the automated call ban.

*Am. Ass'n of Pol. Consultants, Inc. v. Fed. Commc'ns Comm'n*, 923 F.3d 159, 171 (4th Cir. 2019), *aff'd sub nom. Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S.Ct. 2335 (2020).

Those courts which have found the TCPA to be valid with regard to non-Government debt calls, even in light of *Barr*, include *McCurley*, *supra*; *Less v. Quest Diagnostics Inc.*, 2021 WL 266548 (N.D. Ohio Jan. 26, 2021); *Stoutt v. Travis Credit Union*, 2021 WL 99636 (E.D. Cal. Jan. 12, 2021); *Rieker v. Nat'l. Car Cure, LLC* , 2021 WL 210841 (N.D. Fla. Jan. 5,

2021); *Trujillo v. Free Energy Sav. Co., LLC*, 2020 WL 8184336 (C.D. Cal. Dec. 21, 2020); *Shen v. Tricolor California Auto Group, LLC*, 2020 WL 7705888 (C.D. Cal. Dec. 17, 2020); *Abramson v. Federal Ins. Co.*, 2020 WL 7318953 (M.D. Fla. Dec. 11, 2020), *Buchanan v. Sullivan*, 2020 WL 6381563 (D. Neb. Oct. 30, 2020); *Schmitt v. AmerAssist A/R Solutions Inc.*, 2020 WL 6135181 (D. Ariz. Oct. 19, 2020); *Canady v. Bridgecrest Acceptance Corp.*, 2020 WL 5249263 (D. Ariz. Sept. 3, 2020); *Komaiko v. Baker Techs., Inc.*, 2020 WL 5104041 (N.D. Cal. Aug. 11, 2020); and *Burton v. Fundmerica, Inc.*, 2020 WL 4504303 (D. Neb. Aug. 5, 2020).

> For all the reasons stated above, this Court finds that the TCPA, except for the 2015 amendment, remains and remained in full force and effect throughout its tenure.

*Mey v. John Doe Defendant I et al*, Civ. A. No. 5:19-CV-237 [Doc. 126 at 20–27], (N.D. W.Va. April 23, 2021) (Bailey, J.).  This Court finds no reason to deviate from the above analysis.

## III.   Rule 12(b)(6)

Third, this Court has construed the Complaint in the light most favorable to the plaintiff for the purposes of deciding the Matrix Defendants' motion to dismiss.  In doing so, this Court finds that plaintiff's Complaint asserts sufficient factual allegations against the Matrix Defendants to survive the Matrix Defendants' Rule 12(b)(6) motion for dismissal. This Court finds that the plaintiff's Complaint asserts factual allegations against the Matrix Defendants sufficient to "raise a right to relief above the speculative level." *Twombly*, 550

24

U.S. at 555.  In order to properly state a claim for relief, plaintiff is required to provide a "short and plain statement of the claim" that gives defendants "fair notice of what the claim is and the grounds upon which it rests."  *Id*.  Plaintiff has met this standard and her claims are pled with sufficient specificity.

## CONCLUSION

For the reasons stated above, Defendants Matrix Warranty Solutions, Inc. and Matrix Financial Services, LLC's Motion to Dismiss Plaintiff's Complaint **[Doc. 20]** is **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: September 2, 2021.

JOHN PRESTON BAILEY
**UNITED STATES DISTRICT JUDGE**