IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

**DIANA MEY**, on behalf of herself
and a class of others similarly situated,

    Plaintiff,

v.

                                                                                 Civil Action No. 5:21-cv-62
                                                                                 (BAILEY)

**MATRIX WARRANTY SOLUTIONS, INC.,
MATRIX FINANCIAL SERVICES, LLC,
SING FOR SERVICE, LLC, HARD TACK, INC.,
and JOHN DOE DEFENDANTS 1-5**,

    Defendants.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT SING
FOR SERVICE, LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant Sing for Service, LLC d/b/a Mepco's Motion to Dismiss Plaintiff's Complaint [Doc. 42] should be denied for the three following reasons:

*First,* Mepco argues that Ms. Mey failed to sufficiently plead Mepco's connection to the offending calls. The Complaint, however, specifically references an email received by Ms. Mey as a result of these calls, which included a Mepco-issued Payment Plan Agreement. Ms. Mey did not physically sign the Payment Plan Agreement. Rather, the telemarketing agent checked the box indicating approval of the terms and noted "Per Phone" on the signature line. The Mepco-issued Payment Plan Agreement was dated April 6, 2020, which happens to be the date of an offending call. The Complaint also references another bundle of documents received by mail just a few days after the calls. Each of these documents was emblazoned with the Mepco name and logo. The allegations in the Complaint, taken together with the documents referenced therein, are

sufficient for this Court to reasonably infer that Mepco was responsible for the telemarketing calls or that the calls were made by a vendor under its control.

*Second,* Mepco argues that Count II of the Complaint should be dismissed because the relevant Telephone Consumer Protection Act's ("TCPA") protections apply only to "residential telephone subscribers," not cell phone users. But Mepco overlooks the regulatory language extending the TCPA's protections to "wireless telephone numbers." Mepco also fails to distinguish—much less acknowledge—the contrary body of case law.

*Lastly*, in order to "preserve its argument," Mepco argues that Count I of the Complaint should be dismissed because the Supreme Court's decision in *Barr* deprives this Court of subject matter jurisdiction. But this Court has already considered—and rejected—an identical argument by the Matrix Defendants. Mepco's argument should fair no better.

For these reasons, and those set forth below, Mepco's Motion to Dismiss should be denied.

## OPERATIVE ALLEGATIONS

As alleged in the Complaint, Ms. Mey received numerous telemarketing calls between May and June 2017, then later in April 2020. Compl. ¶¶ 20-27. Each of these calls solicited auto warranty agreements. *Id*. And each of these calls was placed to a phone number—described by Ms. Mey as her "residential telephone"—that was registered on the National Do-Not-Call Registry. *Id*. at ¶¶ 18, 54. As a result of both the 2017 and 2020 telemarketing calls, Ms. Mey received copies of warranty service contracts

by both email and mail. *Id*. at ¶¶ 22, 28-31. These documents are referenced in the complaint and quoted in relevant parts. *See id*.[1]

Following the April 6, 2020, phone calls, Ms. Mey received a bundle of documents by email. The Service Contract identified Mepco Finance Corporation as the "Finance Company." *Id*. at ¶ 29; *see also* **Exhibit A**. Also included in the bundle of documents was a Payment Plan Agreement, which identified SING For Service, LLC d/b/a Mepco as the "Payment Plan Provider" and Matrix Warranty Solutions as the "Administrator." *See* Exhibit A, at 4. Mepco Finance Corporation, which was identified in the Service Contract, and SING For Service, LLC d/b/a Mepco, which was identified in the Payment Plan Agreement, purported to share the same address at 205 North Michigan Avenue, Suite 2200, Chicago, Illinois. *Compare* Exhibit A at 2 *with* Exhibit A at 4.

Ms. Mey did not physically sign the Payment Plan Agreement, which was included in the April 6 email. *See* Exhibit A, at 5. Rather, the telemarketing agent checked the box indicating approval of the terms and noted "Per Phone" on the signature line with a date of April 6, 2020. *Id*.

> By signing below, I agree I have had the opportunity to review, accept, and correct any errors contained in this Agreement.
>
> ☒ Purchaser understands that the personal information regarding Purchaser that is provided by Purchaser in connection with this Agreement will not be used or shared with any other party other than for the purpose of providing the services required by this Agreement and the Contract and as required or permitted by applicable law.
>
> Per Phone                                04/06/2020
> Purchaser                                Date
>
> ☒ This Agreement sets forth the terms and conditions of the payment plan authorized by Purchaser by phone or other electronic means. See page 3 for instructions to cancel.        See page 3 for additional terms and conditions.

*Id*.

---

[1] This Court may consider documents that are incorporated by reference into the complaint without converting the motion to one for summary judgment. *See Johnson v. James B. Nutter & Co.*, 438 F.Supp.3d 697, 704 (S.D. W.Va. 2020)(Chambers, J.).

Coincidentally, the Complaint alleges that Ms. Mey received one of the offending calls on April 6, 2020. Compl. ¶ 26. Indeed, below the signature block (reproduced above), there is further indication that the Mepco-issued Payment Plan Agreement was authorized by phone. *See* Exhibit A, at 5.

A few days later, Ms. Mey received related correspondence by mail. Compl. ¶ 31; **Exhibit B**. Emblazoned across the correspondence was the following letterhead:



*Id*.

Notably, Matrix Payment Solutions and Mepco purport to share the same address at 205 North Michigan Avenue, Suite 2200, Chicago, Illinois:

> You may stop your automatic recurring payment at any time by submitting an email to request to stop recurring payments on our website at www.mepco.com, by mailing a written statement expressly revoking this authorization to Mepco, 205 North Michigan Ave - Suite 2200 / Chicago, Illinois 60601, or by calling Mepco's Customer Service department at (800) 397-6767.

*Id*.

4

The correspondence further provides that the "Matrix Payment Solution," which is both "powered by" Mepco and shares the same address as Mepco, "is responsible for the marketing, sale, design, administration of claims, or payment of claims under this vehicle service contract."

> **PLEASE NOTE**
> Matrix Payment Solutions is responsible for the marketing, sale, design, administration of claims, or payment of claims under this vehicle service contract.

*Id*.

On April 24, 2021, Ms. Mey filed a class action complaint, alleging that Mepco and its agents, acting as a common enterprise to promote and sell extended automobile warranties, knowingly engaged in a pattern and practice of illegal telemarketing in violation of the TCPA. [Doc. 1]. In particular, Ms. Mey alleges that Mepco and its agents violated the TCPA by (i) initiating calls to Ms. Mey and other putative class members whose numbers are registered on the National Do-Not-Call Registry, and (ii) initiating calls to Ms. Mey and other putative class members using artificial or prerecorded messages. *See id*.

Matrix Defendants moved to dismiss the Complaint for, among other reasons, failure to sufficiently allege direct liability or agency liability. [Doc. 40]. This Court promptly denied their motion, concluding that Ms. Mey alleges sufficient factual detail to survive a motion for dismissal. [Doc. 41]. This Court should likewise dispense with Mepco's motion.

## ARGUMENT

**I.     Ms. Mey plausibly alleges that Mepco is responsible for the offending calls.**

Mepco argues that Ms. Mey failed to plausibly allege that Mepco was responsible for the offending calls. But Mepco asks for more than is required at this juncture. *All Access Telecom,* [Doc. 126] at *11 ("Whatever the true and exact relationship between defendant and its customers is, the Court finds it to be too fact-intensive to be resolved at the motion to dismiss phase in defendant's favor.") (cleaned up); *McFadden v. Washington Metro. Area Transit Auth.*, 949 F.Supp.2d 214, 222 (D. D.C. 2013) (providing that the existence of a principal-agent relationship is ordinarily a question of fact which is ill-suited for resolution at the motion to dismiss stage).

Ms. Mey has alleged sufficient facts to connect Mepco to the calls in question. And that is sufficient to plausibly plead a claim under the TCPA. *Mey v. Medguard Alert, Inc.*, No. 5:19-CV-315, 2020 WL 1258639, at *3 (N.D. W.Va. Mar. 16, 2020) (slip copy) (providing that plaintiff had alleged sufficient facts to connect defendants to the calls in question and therefore allegations were sufficient to survive a motion under 12(b)(6)). Vicarious liability may be found in light of the "illustrative examples" set forth in the 2013 FCC Ruling,[2] which provides that apparent authority may be supported by, among other things, evidence of (i) permissive use of trade names and trademarks, (ii) shared access to information systems, and (iii) shared information about call recipients. *See* 2013 FCC Ruling, 28 F.C.C. Rcd. 6574, at ¶ 46; *see also Mey v. Venture Data, LLC*, 245 F.Supp.3d 771, 789 (N.D. W.Va. 2017)(Bailey, J.)(relying on the FCC's illustrative examples).

---

[2] The FCC Order also provides that "nothing in our ruling requires a consumer to prove at the time of their complaint (rather than reasonably allege) that a call was made on the seller's behalf." 2013 FCC Ruling, 28 F.C.C. Rcd. 6574, n.139.

Here, Ms. Mey received, as a result of the offending calls, a bundle of warranty documents. The Service Contract identified Mepco Finance Corporation as the "Finance Company." *Id*. at ¶ 29; *see also* **Exhibit A**. Also included in the bundle of documents was a Payment Plan Agreement, which identified SING For Service, LLC d/b/a Mepco as the "Payment Plan Provider" and Matrix Warranty Solutions as the "Administrator." *Id*. Mepco Finance Corporation, which was identified in the Service Contract, and SING For Service, LLC d/b/a Mepco, which was identified in the Payment Plan Agreement, purported to share the same address at 205 North Michigan Avenue, Suite 2200, Chicago, Illinois. *Id*.

Ms. Mey did not physically sign the Payment Plan Agreement. *Id*. Rather, the telemarketing agent checked the box indicating approval of the terms and noted "Per Phone" on the signature line with a date of April 6, 2020. *See* Exhibit B. Coincidentally, the Complaint alleges that Ms. Mey received one of the calls on April 6, 2020, which is the date she received two of the offending calls. Compl. ¶ 26. And below the signature block there is further indication that the Mepco-issued Payment Plan Agreement was authorized by phone. *Id*. Because the telemarketing agent was administering a Mepco-issued contract, it can reasonably be inferred that the telemarketing agent was, at a minimum, an agent of Mepco. Whether Mepco directed the telemarketing calls or exercised a sufficient degree of control over the caller is a question to be answered in discovery. The allegations in the Complaint, taken as true, plausibly connect Mepco to the alleged calls and therefore plausibly plead a claim under the TCPA.

## II. The *Barr* Decision Does Not Deprive this Court of Subject Matter Jurisdiction.

Mepco moves to dismiss Count I of the Complaint based on *Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020), which, as Mepco suggests, deprives this Court of subject matter jurisdiction. But this Court already considered—and rejected—an identical argument by the Matrix Defendants. [Doc. 41]. Mepco's motion should suffer a similar fate.

## III. Ms. Mey States a Claim Under Section 227(c).

Ms. Mey alleges in Count II of her Complaint, that Defendants called her "residential telephone," which is registered on the National Do-Not-Call Registry. Compl. ¶¶ 53-56. Ms. Mey alleges that those calls were a violation of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2). Mepco argues, however, that 47 C.F.R. § 64.1200(c) only applies to calls made to a "residential telephone subscriber," defined as a traditional residential landline. And because the calls were made to Ms. Mey's cellular telephone number, Mepco suggests that Count II should be dismissed.

The regulation at issue—47 C.F.R. § 64.1200(c)(2)—states that no person or entity shall make any telephone solicitation to "a residential telephone subscriber who has registered his or her number on the national do-not-call registry." Though 47 C.F.R. § 64.1200(c) states that it applies to calls to "a residential telephone subscriber," the regulations go on to unambiguously provide that "[t]he rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers," as described by a 2003 Order from the Federal Communications Commission ("FCC"). 47 C.F.R. § 64.1200(e) (citing In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd.

8

14014 (2003)). Mepco—and all the cases cited by Mepco—completely overlook this provision.

Addressing this very issue, courts have concluded that a cell phone user can qualify as "a residential telephone subscriber" under § 64.1200(c). *See, e.g., Smith v. Truman Rd. Dev., LLC*, 2020 WL 2044730, at *10 (W.D. Mo. Apr. 28, 2020); *Hodgin v. Parker Waichman Llp*, 2015 WL 13022289, at *3 (W.D. Ky. Sept. 30, 2015); *Stevens-Bratton v. TruGreen, Inc.*, 2020 WL 556405, at *4 (W.D. Tenn. Feb. 4, 2020); *Izor v. Abacus Data Sys., Inc.*, 2019 WL 3555110, at *2 (N.D. Cal. Aug. 5, 2019); *Rosenberg v. LoanDepot.com LLC*, 435 F.Supp.3d 308, 324 (D. Mass. 2020); *Hand v. Beach Ent. KC, LLC*, 456 F.Supp.3d 1099, 1120 (W.D. Mo. 2020). MEPCO does not distinguish this authority, much less mention it. Curiously, Mepco relies exclusively on cases brought by a single *pro se* plaintiff, Craig Cunningham. None of those cases acknowledge 47 C.F.R. § 64.1200(e), which extends the protections of § 64.1200(c) to "wireless telephone numbers," nor do they acknowledge the body of opposing case law.

In its 2003 Order, the FCC ruled that cellular numbers that were placed on the National Do-Not-Call Registry were presumed to be residential. *See* In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14039 (2003). So, even if Ms. Mey must later *prove* that her cell phone was used for residential purposes, district courts have cited the FCC's regulations as establishing a more lenient pleading standard for a residential subscriber at the motion to dismiss stage. *See Rosenberg v. LoanDepot.com LLC*, 435 F.Supp.3d 308, 324 (D. Mass. 2020) (denying motion to dismiss where plaintiff pled that he put his cellular phone number on the Do Not Call Registry); *Barton v. Temescal Wellness, LLC*, 2021 WL 858402, at *5 (D.

Mass. Mar. 8, 2021) ("Because [Plaintiff] has pled that her cell phone number is registered on the Do Not Call Registry and the Do Not Call Registry is only open to residential subscribers and keeping in mind that at the motion to dismiss stage all reasonable inferences are to be made in her favor, I find that [Plaintiff] has sufficiently pled that she is a residential subscriber for the purposes of her mobile phone number to survive the Rule 12(b)(6) motion."). Here, Ms. Mey alleges that Defendants called her "residential telephone," which is registered on the National Do-Not-Call Registry. Compl. ¶¶ 18, 54. Construing reasonable inferences in favor of Ms. Mey, she has properly alleged that her cellphone is considered a residential line. Whether Ms. Mey's phone line was indeed used for residential purposes is a question to be answered in discovery.

Mepco also argues that Ms. Mey never requested (i) that Defendants stop calling her, (ii) that she be placed on an internal do-not-call list, or (iii) that Defendants produce a copy of their do-not-call procedures. These items are prerequisites to claims based on violations of 47 C.F.R. § 64.1200(d). Ms. Mey's claims, however, are based on an entirely different subsection, Section 64.1200(c). That Ms. Mey did not plead the requirements of section 1200(d) has no bearing on her claims under Section 1200(c).

### CONCLUSION

For the foregoing reasons, this Court should deny Mepco's Motion to Dismiss [Doc. 42]. Alternatively, in the event this Court finds the allegations to be insufficiently pleaded, Ms. Mey requests leave to amend her Complaint to address Mepco's challenges.

**DIANA MEY**

By Counsel:

*/s/ Jeff E. Parsons* (ID # 10678)
James G. Bordas, III (WV Bar # 8518)
Jeff E. Parsons (WVSB # 10678)
BORDAS & BORDAS, PLLC
1358 National Road
Wheeling, WV 26003
(304) 242-8410
jbordasIII@bordaslaw.com
jparsons@bordaslaw.com

Ryan M. Donovan (WVSB #11660)
Andrew C. Robey (WVSB #12806)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
t: 681-265-3802
f: 304-982-8056
rdonovan@hfdrlaw.com
arobey@hfdrlaw.com

## **CERTIFICATE OF SERVICE**

The undersigned counsel does hereby certify that on October 6, 2021, a true copy of the foregoing document was served upon all parties of record electronically via this Court's CM/ECF system.

/s/  Jeff E. Parsons