**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| DIANA MEY, on behalf of herself and a class of others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>MATRIX WARRANTY SOLUTIONS, INC., MATRIX FINANCIAL SERVICES, LLC, SING FOR SERVICE, LLC, JOHN DOE DEFENDANTS 1-5, and HARDTACK, INC.,<br><br>    Defendants. | Case No. 5:21-cv-00062-JPB<br>Hon. John Preston Bailey |

**DEFENDANT SING FOR SERVICE, LLC D/B/A MEPCO'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

This case involves alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227(b), 227(c), and it is, by Plaintiff's own admission, based on a handful of phone calls that she received in 2017 regarding the purchase of a vehicle service contract. Despite this, Plaintiff named as Defendants in this action anyone and everyone whose name appeared on any document related to any vehicle service contract that she purchased at any point in time. That scattershot approach is precisely why Defendant SING for Service, LLC, d/b/a Mepco ("Mepco") is part of this lawsuit, notwithstanding the fact that it is a payment plan processor whose name only appeared in a document sent to plaintiff in 2020, after she had signed up for a different vehicle service contract.

Discovery has brought to light what Mepco has known all along – that its inclusion in this case was a sham from the outset. Plaintiff has admitted that, outside of a single, isolated reference

1

to Mepco serving as an after-the-fact processor of payments for a vehicle service contract purchased by Plaintiff in 2020 – a contract unrelated to the phone calls at issue in this lawsuit – she has absolutely no evidence to link Mepco in any way to any contract that she purchased, let alone to the phone calls on which she is actually basing her lawsuit.  In addition, Mepco has provided sworn testimony establishing that it had absolutely nothing to do with any of the offending phone calls, either directly or indirectly.  This undisputed factual record mandates that summary judgment be entered in favor of Mepco.

## II.     MATERIAL FACTUAL ALLEGATIONS

Plaintiff's Complaint purports to assert claims against Mepco for alleged violations of the TCPA.  (ECF No. 1, PageID.9-11).  In her Complaint, Plaintiff alleges that her lawsuit relates to a motor vehicle service warranty she was solicited to purchase and did eventually purchase. (ECF No. 1, PageID.5).  Plaintiff claims that she received a call from a (954) 360-8137 phone number from a "live agent," after previously expressing interest in purchasing a motor vehicle warranty in response to pre-recorded messages and discussions with live agents, and "in order to identify the true identity of the caller, authorized the live agent to charge her credit card."  (ECF No. 1, PageID.4-6).

Importantly, Plaintiff does not allege that she received any phone call from Mepco, in 2017 or at any other time, and she concedes that her first, and only, "interaction" with Mepco was when she received a warranty policy in 2020 via e-mail that identified "Sing for Service, LLC d/b/a Mepco as the 'payment plan provider'."  (ECF No. 1, PageID.6).  Plaintiff's Complaint also does not even allege that Mepco, specifically, violated any law, instead making only conclusory allegations that "Defendant" or "Defendants" violated the TCPA.   (ECF No. 1, PageID.9-11).

Give the absence of any actionable allegations relating to Mepco, Mepco sought dismissal of Plaintiff's Complaint for failure to state a claim upon which relief could be granted.  While the

Court gave Plaintiff the benefit of the doubt and allowed discovery to proceed to determine if a factual record could be developed that could potentially impose liability on Mepco, discovery has instead only reinforced that Plaintiff has no facts on which liability against Mepco could be found.

By way of background, it is undisputed that Mepco is a payment plan processor and is in the business of processing monthly payments under installment plan agreements, including vehicle service contracts.  *See* **Exhibit A**, Decl. of Anthony Hammes, ¶ 1.  Mepco never has contact or communication with a purchaser of a vehicle service contract until after the vehicle service contract has been sold to the consumer by a third party not associated with Mepco. *See id.*  After a consumer agrees to purchase a vehicle service contract, the consumer is then directed to make monthly payments through Mepco. *See id.*  The only communication that Mepco has with consumers is related to payments under payment plan agreements.  See *id.* at ¶ 2.  If, for example, a consumer purchaser has a question about claims or coverage under a vehicle service contract, Mepco directs that consumer to the administrator of the vehicle service contract, a third party not associated with Mepco. *See id.*

Furthermore, Mepco has never engaged in consumer marketing or telemarketing related to vehicle services contracts, either directly or indirectly. *See id.* at ¶ 4.  As explained by Mepco Vice President of Compliance and Corporate Communications Officer Anthony Hammes, "Mepco does not exercise any direction or control over any third party's telemarketing, marketing, or sales of vehicle service contracts.  Mepco has never entered into any marketing agreements with third parties related to the marketing or telemarketing of vehicle service contracts." *See id.*

Consistent with its role (or lack thereof) in the process, Mepco has expressly denied calling Plaintiff, directing any other party to do so, or having any role whatsoever in those activities:

> Mepco did not call Ms. Mey.  Mepco did not direct any party to call Ms. Mey.
> Mepco did not provide any party with information to facilitate a call to Ms. Mey.

> Mepco has never given any party the authority to call Ms. Mey or any other consumer. Mepco has never provided any party with information to facilitate calls to consumers. Mepco had no knowledge that any calls were placed to Ms. Mey.

*See id.* at ¶ 5.

At her deposition, Plaintiff admitted that she had no information that could contradict any of the foregoing:

> Q. [D]o you have any information, as you sit here today, that would tie Mepco to any of these four calls in 2017?
>
> A. No.
>
> Q. You don't have any information that had any control over how those calls were made, do you?
>
> A. I don't.
>
> MR. DONOVAN: Object to the form.
>
> Q. And you don't have any information that Mepco directed anyone to make those calls in 2017, do you?
>
> MR. DONOVAN: Object to the form.
>
> A. I don't.
>
> Q. Do you have any information, Ms. Mey, that Mepco benefited in any way from any of those four calls in 2017?
>
> MR. DONOVAN: Object to the form.
>
> A. I don't.
>
> Q. Do you have any information that Mepco provided any of your information to enable them to make any of those four calls?
>
> A. I don't.
>
> …

Q. Do you have any information that Mepco was aware that those calls were occurring in 2017 at the time they occurred?

A. I don't.

…

Q. If Mepco says that it doesn't and it has never done any direct consumer marketing or sales of any product, do you have any basis to dispute that?

A. No.

…

Q. [I]f Mepco says it doesn't have any marketing contractual relationships with any third parties, would you have any basis to dispute that?

A. No.

Q. If Mepco said it's never given authority to any third-party to market or sell on behalf of Mepco, do you have any basis to dispute that?

A. No.

Q. If Mepco says that it never provides information to any third party for their use in marketing or sales, do you have any basis to dispute that?

A. No.

**Exhibit B**, Mey Dep. Tr. 231:10 – 232:17; 239:1-240:3.

And while Plaintiff tried to claim that Mepco was somehow involved in the 2017 calls,[1] the evidence of record establishes the opposite. When faced with the contract that resulted from

---

[1] There is no dispute that only the 2017 calls are at issue here. In response to interrogatories propounded by Mepco and the Matrix Defendants, Plaintiff has admitted that the only telephone calls that she believes are actionable are those placed on April 27, 2017; May 19, 2017; May 22, 2017; and June 20, 2017, after initially alleging that certain calls in 2020 and 2022 were also actionable. See Pltf.'s Supplemental Resp. to Matrix Def's First Set of Discovery Requests, ECF

the 2017 calls, Plaintiff was forced to concede that Mepco's name did not appear anywhere in that document. *See* Ex B, Mey Dep. Tr. 232:25 – 234:6; **Exhibit D**, Mey Dep. Ex. 35 at 10-19. She further admitted that she had no information connecting Mepco to that vehicle service contract in any way. *See* Ex B, Mey Dep. Tr. at 235:1-20.

Moreover, Plaintiff admitted that she believes the vehicle service contract she received as a result of the April 27, 2017 call utilized Paylink as a payment plan processor. *See id.* at 32:1-12; 33:21-25. In Plaintiff's contemporaneous notes related to the April 27, 2017 call, she identifies "Paylink, National Auto Protection Corp, Matrix Warranty Solutions, Dealers Assurance Corp aka DAC Financial Holdings Inc. d/b/a Dealers Alliance Corporation" as being affiliated with the call and the vehicle service contract that she purchased. *See* Ex C, Mey Contemporaneous Notes. In her notes related to the subsequent three calls which Plaintiff maintains are actionable, no additional companies are identified, and Mepco is not named. *See id.*

Mepco's sworn testimony conclusively establishes that Mepco was not involved in the 2017 contract in any way. Mepco is not a party to that contract, did not provide a payment plan agreement to Plaintiff in connection with that contract, and was not involved in any way with the marketing or sale of that contract. *See* Ex. A, Decl. of Anthony Hammes at ¶¶ 6-7.

These undisputed facts are important, because not only was Mepco not even mentioned in that vehicle service contract, but Paylink is a direct competitor of Mepco's in the payment processor industry. Thus, Plaintiff's concession that Paylink was the payment plan processor affiliated with the vehicle service contract that Plaintiff obtained as a result of the April 27, 2017

---

No. 113-5, PageID.686; Ex B, Diana Mey Deposition Tr., 227:1 – 231:8; **Exhibit C**, Diana Mey Contemporaneous Notes, Mey Deposition Exhibit 5.

call further demonstrates that Mepco would have had absolutely nothing to do with that vehicle service contract or the calls that Plaintiff alleges form the basis of her claims.

### III.   LAW AND ARGUMENT

#### A.   STANDARD FOR SUMMARY JUDGMENT.

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. American Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party makes this threshold demonstration, the non-moving party may not rest upon mere allegations or denials averred in the pleading, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* FED. R. CIV. P. 56; *see also Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). A litigant is unable to "create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by

summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991).

### B. PLAINTIFF HAS FAILED TO DEMONSTRATE A GENUINE DISPUTE OF MATERIAL FACT.

In her deposition, Plaintiff admitted that she has no evidence to show that Mepco is responsible for, or even had any connection with, any the four calls that she believes are actionable. *See* Ex B, Mey Dep. Tr. 231:10 – 232:17; 235:1-20; 239:1-240:3.  Moreover, Plaintiff has further admitted that the payment plan processor for the vehicle service contract stemming from the calls she believes are actionable was Paylink, a direct competitor of Mepco's.  *See* Ex B, Mey Dep. Tr. 32:1-12;  33:21-25; Ex C, Mey Contemporaneous Notes.  And Mepco has confirmed, under oath, that it had no involvement whatsoever with the 2017 calls or contract.  *See* Ex. A, Decl. of Anthony Hammes at ¶¶ 6-7.  Thus, at <u>most</u> for Plaintiff, she can show that Mepco was a payment plan processor for a vehicle service contract that Plaintiff entered into in 2020 based on phone calls that are <u>not</u> part of this case.  There is simply no question that summary judgment in favor of Mepco is proper under these circumstances.

#### 1. Plaintiff has presented no evidence to suggest that Mepco violated Section 227(b) or 227(c) of the TCPA.

Section 227(b) of the TCPA makes it unlawful for any person to "make any call [with enumerated exceptions] using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service for which the called party is charged for the call," or "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party."  47 U.S.C. § 227(b)(1)(A)(iii), (B).  Section 227(c) of the TCPA creates a private right of action, and its implementing regulations, set forth in 47 C.F.R. § 64.1201, provide as follows:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity.

47 C.F.R. § 64.1200(d).

To bring a claim for violation of the TCPA, a plaintiff must show that the defendant 1) initiated a call or a sent a text message, 2) using an automatic telephone dialing system, and 3) without the recipient's prior express consent. *Champion v. Credit Pros International Corporation*, Civil Action No. 21-10814(JXN) (JBC), 2022 WL 3152657, at *3 (D.N.J. Aug. 5, 2022) (dismissing plaintiff's TCPA claims under Section 227(b) and Section 227 (c) for failure to satisfy 12(b)(6) pleading standards); *See Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771 (N.D. W.Va. 2016); *Cunningham v. TechStorm, LLC*, No. 3:16-cv-2879-M, 2017 WL 721079, at *2 (N.D. Tex. Feb. 23, 2017) ("Plaintiff has failed to state a claim upon which relief may be granted. The Amended Complaint does not provide sufficient factual allegations regarding the source, time, and frequency of the calls."); *see also Reese v. Marketron Broad. Sols., LLC*, CIVIL ACTION NO. 17-9772 SECTION "R" (1), 2018 U.S. Dist. LEXIS 803, at *4 (E.D. La. Jan. 3, 2018) ("Plaintiff's first amended complaint fails to state a TCPA claim because it rests on conclusory allegations of collective wrongdoing . . . 'liability is personal.'") (quoting *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013))).

In *TechStorm*, the plaintiff asserted violations of the TCPA against a defendant, who in its motion to dismiss argued that the plaintiff "fail[ed] to coherently specify the time, date, or even the number of calls he allegedly received," and that such imprecise allegations "deprive[d] [Defendant] of the fundamental right to fair notice and prejudice[d] its ability to prepare a defense." *Id.* The defendant contended that because plaintiff did not provide such key details, he made only speculative and conclusory allegations. *See id.* The court found that plaintiff had failed to

adequately state a claim on which relief could be granted because the amended complaint only alleged that "in 2015 and/or 2016" he received "one or more phone calls" to his cellphone made by an automatic telephone system, that "at least one message was left" accompanied by a "brief period of dead-air time" and "multiple playback errors," which indicated that the message was being made by an automatic telephone dialing system." *See id.* (dismissing complaint because it failed to provide sufficient factual allegations regarding the source, time, and frequency of the calls).

Similarly, here Plaintiff has not detailed a single call from Mepco or provided any non-speculative basis for why she believes Mepco made or directed any of the allegedly violative phone calls at issue. In fact, as discussed *supra*, Plaintiff has admitted that only four of the calls originally detailed in her Complaint are actionable, and then further admitted that she has no evidence that Mepco is responsible for, or related in any way to, those calls. *See* Ex B, Mey Dep. Tr., 227:1 – 232:17; 239:1-240:3; Ex C, Mey Contemporaneous Notes, Mey Deposition Exhibit 5.

On the other side of the ledger is (1) the sworn testimony of Mepco's Vice President of Compliance and Corporate Communications Officer, Anthony Hammes, who testifies in his declaration that Mepco had nothing whatsoever to do with the phone calls that Plaintiff allegedly received, either directly or indirectly, either in 2017 or 2020; and (2) the undisputed fact that Paylink, not Mepco, was the payment plan processor for the contract resulting from the 2017 calls. Again, it cannot be overstated that Plaintiff has absolutely no evidence to rebut these facts. Given this undisputed record, there is no question that Mepco is entitled to summary judgment. *See Cunningham v. Politi*, No. 4:18-cv-00362, 2019 WL 2519702, at *7 (E.D. Tex. Apr. 26, 2019) (Nowak, M.J.) (dismissing Plaintiff's claim under Section 227(b) of the TCPA because he "fails to identify a single call directly made by [Defendant] or to provide any non-speculative basis for why

he believes [the defendant] made or directed any of the allegedly violative phone calls . . . .") *report and recommendation adopted*, No. 4:18-cv-362, 2019 WL 2526536, at *1 (E.D. Tex. June 19, 2019); *TechStorm*, No. 3:16-cv-2879-M, 2017 WL 721079 (E.D. Tex. June 19, 2019), at *2 (dismissing Plaintiff's complaint because it failed to provide sufficient factual allegations regarding the source, time, and frequency of the alleged calls).

## 2. **Plaintiff has no evidence to suggest that Mepco is vicariously liable under the TCPA.**

Plaintiff has also failed to present any evidence to establish that Mepco can be held vicariously liable for the calls at issue.[2]

The Federal Communications Commission (FCC)'s declaratory ruling in *In re Dish Network* does acknowledge the possibility of vicarious liability for TCPA violations under agency principles, including formal agency, apparent authority, and ratification. *See In re Dish Network, LLC*, 28 F.C.C. Rcd. at 6584 ¶ 28 ("[W]e find that the seller may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles."). But broad, generalized allegations that lump defendants together are not sufficient to give rise to an inference of an agency relationship. *See Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 787 (N.D. W.Va. 2016) ("In the TCPA context, courts have characterized the control necessary to establish agency as being control over 'the manner and means' of the agent's calling activities"); *Cunningham v. Lifestyles Dev., LLC*, No. 4:19-cv-00006-ALM-CAN, 2019 U.S. Dist. LEXIS 154112 at *12 (E.D. Tex. Aug. 8, 2019)

---

[2] When asked in discovery what evidence she had to establish vicarious liability, Plaintiff claimed that the question was premature. *See* Ex D, Mey Dep Ex. 35 at 4. When subsequently asked in her deposition, just two months ago, what the factual basis for this claim was, Plaintiff stated that she does not "have any additional information at this time." Ex D, Mey Dep. Tr. at 241:20-242:3. In sum, Plaintiff still has not presented any evidence to support her vicarious liability claim.

("Plaintiff must allege factual allegations regarding [defendant's] relationship with the purported agents/callers – broad, general allegations are not sufficient.") (citing *Naiman v. Freedom Forever, LLC*, No. 19-cv-00256-JSC, 2019 U.S. Dist. LEXIS 69728 at *4 (N.D. Cal. Apr. 24, 2019)); *Aaronson v. CHW Grp., Inc.*, Case No. 1:18-cv-1533, 2019 U.S. Dist. LEXIS 231433, at *6-7 (E.D. Va. Apr. 15, 2019) (dismissing TCPA vicarious liability claims because the plaintiff failed to plead "details from the telephone calls that would tend to demonstrate an agreement between the caller and defendant that the caller would act on the principal's behalf and subject to the principal's control.").

A claim that is "devoid of any facts showing that [a defendant] had control over any other defendant, agent, or caller" is fatally flawed. *Lifestyles Dev., LLC*, 2019 U.S. Dist. LEXIS 154112 at *12 (dismissing Plaintiff's vicarious liability claim because Plaintiff "fail[ed] to connect [defendant] with any purported callers; instead, Plaintiff lump[ed] [all] defendants together, and generally assert[ed] that the calls were made on behalf of [the named defendants] without any further indication of how [the defendant] asserted control over any specific co-defendant, agent, or caller."). Here, the record is devoid of any facts showing that Mepco had any control over any other Defendant, agent, or caller, at any point in time. In fact, the only evidence of record establishes just the opposite. *See* Ex A, Decl. of Anthony Hammes, ¶¶ 1-5.

        **a.**     **Plaintiff has not shown actual authority.**

"[T]he 'essential element' of an agency relationship is the principal's control over the agent's actions….In the TCPA context, courts have characterized the control necessary to establish agency as being control over 'the manner and means' of the agent's calling activities." *Venture Data, LLC* 245 F. Supp. 3d at 787 (quoting REST 3d AGEN § 1.01 cmt f.; *Lushe v. Verengo Inc.*, 2014 WL 5794627, at *4 (C.D. Cal. Oct. 22, 2014)).

Plaintiff has no evidence of <u>any</u> control by Mepco over the "manner and means" of the alleged agent's calling activities, so any purported allegations of actual authority fail. There is no evidence that the callers acted under Mepco's control or direction, Mepco has explicitly denied under oath that it exercised any such control or direction, and Plaintiff has admitted that she has no evidence showing any such activities by Mepco. And again, there is <u>zero</u> evidence linking Mepco to the 2017 calls and resulting contract in any way.

This undisputed evidence dooms Plaintiff's claim. For example, the United States District Court for the Northern District of California recently dismissed a TCPA claim – on both direct and vicarious grounds – due, in part, to plaintiff's failure to show that defendants had any control over a third-party retailer's marketing campaign. *See Sheski v. Shopify (USA) Inc.*, Case No. 19-cv-06858-HSG, 2020 U.S. Dist. LEXIS 84433, at *12-13 (N.D. Cal. May 13, 2020) ("In order to allege a traditional agency relationship, Plaintiff would have to allege Defendant controlled or had the right to control [the entity responsible for the text messages] and, more specifically, the manner and means of the text message campaign they conducted.") (alteration in original) (quoting *Linlor v. Five9, Inc.*, No. 17-cv-218-MMA (BLM), 2017 U.S. Dist. LEXIS 108162, at *3 (S.D. Cal. 2017)); *Born v. Celtic Mktg. LLC*, No. 8:19-cv-01950-JLS-ADS, 2020 U.S. Dist. LEXIS 89220, at *13 (C.D. Cal. May 20, 2020) (dismissing plaintiff's TCPA claim after finding allegations attempting to attribute telemarketers contacts with the forum to vehicle protection administrator defendants under agency theories to be insufficient for failure to show "the principal's right of control.")

Similarly, Plaintiff's vicarious liability claim against Mepco fails because, as stated above, she fails to allege any facts plausibly suggesting that Mepco asserted any degree of control over

the conduct of any third-party marketer at any point in time, let alone specifically in 2017 at the time of the offending phone calls, and all of the evidence of record establishes just the opposite.[3]

### b. Plaintiff has not shown apparent authority.

"Courts in this district, and elsewhere, have looked to the Restatement as the source of federal agency principles." *Venture Data, LLC*, 245 F. Supp. 3d at 787. According to the Restatement of Agency, "[a]pparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." REST 3d AGEN § 2.03 (emphasis added).

Here, Plaintiff has no evidence to establish apparent authority, because there is no evidence of any manifestation by Mepco toward Plaintiff or anyone else, nor are there any facts establishing that Plaintiff formed a belief as to the authority of the callers to act on behalf of Mepco as a result. *See Lifestyles Dev., LLC* (finding plaintiff did not sufficiently plead agency relationship, in part, as there is no allegation that "based on the references in the [contract], he reasonably believed the entities who called him were agents of [the alleged principal]."); *Cunningham v. Health Plan Intermediaries Holdings*, LLC, No. 17-cv-1216, 2018 U.S. Dist. LEXIS 22921, at *16 (N.D. Ill.

---

[3] Nor can Plaintiff's nebulous contract theory establish actual authority. During her deposition, Plaintiff claimed that Mepco had "some kind of contractual relationship" with Matrix Payment Solutions, based on the appearance of Mepco's name on the 2020 contract. *See* Ex. B, Mey Dep at 239:5-12. But, as the Seventh Circuit recently observed in *Warciak v. Subway Restaurants, Inc.*, "[w]hile an agency relationship can be created by contract, not all contractual relationships form an agency." 949 F.3d 354, 357 (7th Cir. 2020) (emphasis added). This proposition highlights the analytical flaws in Plaintiff's argument, because it conflates the ability of a third party to sell a Mepco service with any alleged right by Mepco to control the seller's telemarketing conduct, none of which is alleged here (because there is none). In addition, even if there were some agency relationship between Mepco and Matrix in 2020, that would be irrelevant here, where Plaintiff's claims are based on conduct that took place in 2017.

Feb. 13, 2018) (finding plaintiff did not sufficiently plead manifestations of authority when the telemarketers simply mentioned defendants' products on their phone calls).

In the absence of such evidence, Plaintiff's apparent authority claim holds no weight.

### c. **Plaintiff has not shown ratification.**

"Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Venture Data, LLC*, 245 F. Supp. 3d at 788 (quoting REST 3d AGEN § 4.01, cmt. b). "Of critical importance [under a theory of ratification] is the principal's knowledge of the transaction and his actions in light of such knowledge." *Schakosky v. Client Servs.*, 634 F. Supp. 2d 732, 736 (E.D. Tex. 2007). Here, Plaintiff provides no evidence that Mepco *knew* of the allegedly unlawful calls and then ratified that conduct after being apprised of the material facts. Rather, the only evidence of record is that Mepco had no knowledge of those calls, and it was not involved in any way with the allegedly wrongful conduct in 2017, even remotely. And without any such knowledge or involvement, Mepco clearly could not have taken any action to ratify the callers' actions.

### IV. CONCLUSION

Based on the foregoing, Defendant SING for Service, LLC d/b/a Mepco respectfully requests that this Court dismiss Plaintiff's claims against it, with prejudice.

**SING for Service, LLC d/b/a MEPCO**
**By Counsel**

/s/Kaitlyn N. McKitrick
Kaitlyn N. McKitrick (WVSB #12782)
Bowles Rice LLP
125 Granville Square, Suite 400
Morgantown, WV  26501
(304) 285-2517
kmckitrick@bowlesrice.com

Patrick R. Hanes (WVSB #12472)
Williams Mullen
999 Waterside, Suite 1700
Norfolk, VA 23510
phanes@williamsmullen.com


Brion B. Doyle (MISB #P67870)
Varnum LLP
333 Bridge Street NW, Suite 1700
P.O. Box 352
Grand Rapids, MI 49504
bbdoyle@varnumlaw.com