IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling Division

DIANA MEY, on behalf of herself
and a class of others similarly situated,

    Plaintiff,

v.

MATRIX WARRANTY SOLUTIONS,
INC., et al.

    Defendants.

Civil Action No. 5:21-cv-00062

## PLAINTIFF'S RESPONSE IN OPPOSITION TO MATRIX DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S CLASS EXPERT

Matrix challenges the adequacy of Ms. Verkhovskaya's opinions and proposed methodology. But this Court already spoke to the soundness of Ms. Verkhovskaya's opinions when it certified a proposed class based on her proposed methodology. Because Matrix's motion is a needless rehash of the same arguments presented at class certification, this Court should reject those arguments again here.

### SUMMARY OF MS. VERKHOVSKAYA'S AMENDED REPORT

Matrix's arguments are largely based on mischaracterizations of Ms. Verkhovskaya's opinions and proposed methodology.[1] Ms. Verkhovskaya was given

---

[1] This Court recently reached the same conclusion. *See* ECF No. 189, at 13 ("[T]he Matrix defendants argue that plaintiff has failed to provide an administratively feasible method for identifying class members. This argument, however, is based on a seeming mischaracterization of the role of plaintiff's expert, Ms. Verkhovskaya" and "Contrary to the Matrix defendants' arguments, Ms. Verkhovskaya does not appear to have been hired to opine on the meaning of the 'per phone' notation—rather, she was asked to identify potential class members who fit within these analytical metrics").

a narrow task: identify a simple, scalable method by which this Court can identify potential class members that have payment plan agreements with a "per phone" notation. *See* Exhibit 1. Ms. Verkhovskaya has thus detailed the manner in which she can programmatically identify each payment plan agreement containing a "per phone" notation, while filtering out customers with inoperable phone numbers, duplicate entries, and other disqualifying attributes. *Id.* at 10-11. Ms. Verkhovskaya's methodology obviates the need to manually review 10,000-plus payment plan agreements for the "per phone" notations. Contrary to Matrix's suggestion, Ms. Verkhovskaya has not been asked to opine on the meaning of the "per phone" notation. Whether the "per phone" notation indicates an outbound prerecorded message, is a question for the jury.

## OPERATIVE BACKGROUND

Because Matrix also challenges the timeliness of Ms. Verkhovskaya's amended report, Mey details the labored process of obtaining the two different sets of customer lists (one from DAC, and one from Matrix) and the two different sets of payment plan agreements (requested from Mepco, but ultimately secured from Forte).

Plaintiff's expert disclosure deadline was January 14, 2022. ECF No. 32. On January 14, 2022, Mey produced the Expert Report of Anya Verkhovskaya. ECF No. 66. That report proposed a method by which Ms. Verkhovskaya would identify class members using call records, which she expected to obtain during the course of litigation. *See* Exhibit 2. Discovery would later reveal, however, that National Auto Protection Corp. ("NAPC") and its owner, Gustav Renny, destroyed or otherwise

abandoned those call records when NAPC dissolved in September 2019. *See* ECF No. 187-1. And because NAPC failed to retain these call records, Mey was left to identify a class based on two alternative pieces of classwide evidence: lists of customers who purchased Matrix policies through NAPC, and the corresponding payment plan agreements.

In February 2022, Mey subpoenaed Customer List 1 from DAC, Matrix's administrator for a brief period. *See* ECF No. 69. DAC fought that subpoena for months, nearly requiring Mey to hire local counsel to enforce the subpoena in New Mexico. *See* ECF No. 82. DAC eventually capitulated and produced Customer List 1 in June 2022.[2] Once Mey had Customer List 1, she requested from Mepco the payment plan agreements for those customers. *See* ECF No. 104. Mepco proceeded to needlessly object and delay. *See* ECF No. 104 (motion to compel). Mepco eventually promised to produce relevant payment plan agreements, so the motion to compel was withdrawn in September 2022. *See* ECF No. 109. In October 2022, Mepco was then asked to produce payment plan agreements associated with Customer List 2. ECF No. 119. In November 2022, Mepco provided its written responses, representing only that "Mepco will produce the defined Payment Plan Agreements to the extent those documents are within Mepco's possession, custody, or control." *See* ECF No. 128. No payment plan agreements, however, were provided. Frustrated with Mepco's delay,

---

[2] DAC omitted customer phone numbers from the first version of Customer List 1. When asked to provide the associated customer phone numbers, DAC refused. After months more of exhaustive discussions, DAC eventually provided the requested phone numbers in August 2022. ECF No. 153-20.

Mey turned to another possible source. In November 2022, Mey subpoenaed a third-party clearinghouse, Forte Data Systems, for the payment plan agreements associated with Customer List 2. *See* ECF No. 132. Identifying and aggregating 8,327 responsive payment plan agreements, however, took time. Forte ultimately produced the last remaining set of payment plan agreements on December 5, 2022. With the totality of the class documents finally in hand, Ms. Verkhovskaya was able to prepare an amended report, which was served on Matrix on December 15, 2022. *See* ECF No. 137.

## ARGUMENT

### A. The Amended Report is a Timely Supplementation

Matrix claims that Mey's amended expert report should be stricken as "untimely." But the Amended Expert Report of Anya Verkhovskaya is a timely supplementation contemplated by Federal Rule of Civil Procedure 26. *See* Fed. R. Civ. P. 26(e)(2) (providing that supplementations to expert reports "must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due"). Mey produced the Expert Report of Anya Verkhovskaya by the January 14, 2022 disclosure deadline. That report detailed the process Ms. Verkhovskaya would use to identify absent class members based on standard call records. However, given that Matrix's telemarketing vendor destroyed or otherwise abandoned the call records upon which those opinions were based, Ms. Verkhovskaya amended her report to detail the process she would use to identify absent class members in the absence of such call records. The original and amended report were offered for the same reason:

to identify an administratively feasible method for identifying class members. Because Ms. Verkhovskaya updated her opinions to reflect the record evidence, the amended report should be considered a supplementation.

### B. The Amended Report is Justified and Non-Prejudicial

Even if the amended report is not considered a supplementation, the amended report was substantially justified and non-prejudicial. In determining whether to strike the amended report, this Court looks to five factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Shulin v. Werner Enterprises, Inc.*, 2017 WL 2233621, at *2 (N.D.W. Va. Jan. 18, 2017) (quoting *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003)). Matrix does not discuss any of these factors, but each militates in Mey's favor.

**First**, Ms. Verkhovskaya's amended report is not prejudicial. Indeed, Matrix does not claim surprise or any resulting prejudice. Nor could it. The amended report was served well before the February 2, 2023 discovery deadline, meaning Matrix had the opportunity to conduct any follow up discovery that may have been necessitated by the amended report. Matrix's expert, Jan Kostyun, prepared and served an updated rebuttal report. Matrix also deposed Ms. Verkhovskaya on the amended report prior to briefing class certification and dispositive motions. So, even if the amended report were untimely, the intervening delay was harmless.

**Second**, Ms. Verkhovskaya's amended report is justified. The amended report was necessitated because Matrix's telemarketing agent destroyed or otherwise abandoned the call records that are often central to identifying class members. Because Matrix's telemarketing agent failed to retain these records, Mey was forced to identifying class members through other means. Identifying and collecting that alternative evidence from varying sets of custodians was an arduous process that Mey diligently navigated. Matrix should not benefit from the delay caused by the destruction of class records.

**Third**, striking Ms. Verkhovskaya's amended report will only burden class administration. Ms. Verkhovskaya's method of programmatically identifying customers with a "per phone" notation in their payment plan agreement obviates the need to manually review 10,000-plus payment plan agreements. Without Ms. Verkhovskaya's opinions, the parties will be left to guess which exact customers qualify for class membership. But that is the point. By striking Ms. Verkhovskaya, Matrix hopes to saddle the class vehicle with logistical nightmares. There are no practical or equitable concerns that favor striking Ms. Verkhovskaya's opinions as untimely.

### C. Ms. Verkhovskaya Offers Expert Opinions

Matrix claims that Ms. Verkhovskaya's analysis "requires no expertise." Not so. Rather than review each of the 10,375 payment plan agreements by hand, Ms. Verkhovskaya has provided a method for programmatically identifying each individual with a "per phone" notation in their payment plan agreement, while

6

filtering out customers based on inoperable phone numbers, duplicate entries, and other disqualifying attributes. Ms. Verkhovskaya will do this using data mapping, .SQL staging tables, optical character recognition, and a series of commands and queries. But because Ms. Verkhovskaya described this process as "rudimentary and simple," Matrix suggests that her opinions are unworthy of an expert designation. This is nonsensical. Certain medical procedures are likely considered "rudimentary and simple" by those that perform them. But that does not suggest that those same procedures lack scientific or technical expertise. Ms. Verkhovskaya clearly brings her technical expertise to bear in providing this Court with an administratively feasible method for identifying absent class members.

**D. Ms. Verkhovskaya's Methodology Satisfies the *Daubert* Standard**

Matrix claims that Ms. Verkhovskaya's methodology does not meet the *Daubert* standard because it (i) assumes the "per phone" notation indicates the use of a prerecorded message, (ii) fails to identify Mey as a class member, (iii) fails for want of call records, and (iv) fails to remove numbers with certain characteristics. These arguments are simply a rehash of Matrix's opposition to class certification. This Court rejected each of those arguments there, and should do so again here.

**DIANA MEY**

By Counsel:


/s/ *Andrew C. Robey*
Ryan M. Donovan (WVSB #11660)
Andrew C. Robey (WVSB #12806)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
t: 681-265-3802
f: 304-982-8056
rdonovan@hfdrlaw.com
arobey@hfdrlaw.com

## CERTIFICATE OF SERVICE

The undersigned counsel does hereby certify that on March 28, 2023, a true copy of the foregoing document was served upon all parties of record via ECF notification.

/s/ *Andrew C. Robey*
Andrew C. Robey (WVSB #12806)